COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Alston and Senior Judge Frank
Argued at Norfolk, Virginia

UNPUBLISHED

JAMES McKINLEY TAYLOR

                                        MEMORANDUM OPINION* BY
v.        Record No. 0687-17-1              JUDGE ROSSIE D. ALSTON, JR.
                                                 JUNE 12, 2018
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                    Frederick B. Lowe, Judge Designate

        Aaron C. Forstie, Assistant Public Defender, for appellant.

        Brittany A. Dunn-Pirio, Assistant Attorney General (Mark R.
        Herring, Attorney General, on brief), for appellee.


        James McKinley Taylor (appellant) appeals his possession with intent to distribute

cocaine, second offense conviction, arguing that the trial court erred in denying his motion to

strike. Appellant specifically contends that the evidence was insufficient to sustain his

conviction. Appellant then argues that the trial court rendered inconsistent verdicts when it

convicted appellant of that offense but not of the two firearm-related offenses. We disagree.

                                        BACKGROUND

        At approximately 4:38 a.m. on November 14, 2015, a "high-risk" search warrant was

executed at a residence requiring the involvement of a four-person Special Weapons and Tactics

(SWAT) team. The SWAT team entered the residence and detained its occupants. The SWAT

team encountered Terry Taylor—appellant's mother (Terry), Donald Taylor—appellant's brother

(Donald), and appellant. Appellant was observed standing in the hallway near Room 7, the

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

bathroom, and Room 6, a bedroom (Bedroom 1), in a white tank top and boxer briefs.[1]  The three individuals were taken to Room 1, the living room.  Then, officers executed the search warrant.  The warrant covered a search of the residence and a search of appellant's person.  The warrant specified that the officers were to search for narcotics and cocaine.  In addition to searching appellant, officers assigned themselves to search particular rooms.

Nothing of evidentiary value was found in Room 3, the laundry room, Room 7, the bathroom, or in Room 5, the back bedroom where Terry was found.

Officer Kath found the following in Room 4, a bedroom (Bedroom 2) where Donald was found:  a handgun, a tax form, a debit/credit card, a shotgun, a gun in a backpack, jeans with a wallet containing identification, and a cell phone.  The personal items all belonged to Donald.

Officer Morris found the following in Room 2, the kitchen (the kitchen):  on top of the two refrigerators—three bags of cocaine, two scales, loose money, sandwich baggies with the corners removed, a sandwich baggie box containing loose money, and a paystub addressed to

---

[1] There were two diagrams of the residence in evidence.  One was drawn by a member of the SWAT team, CW Ex. #2, and the other was drawn by Detective Hocutt, CW Ex. #3.  For the sake of consistency with the record, the initial references to rooms will be made according to CW Ex. #3, which appears here:





appellant, on the counter—a small bag of marijuana, and in the cabinet above the counter—a glass bowl filled with money.

Detective Hocutt and Officer Scott then searched Bedroom 1. Detective Hocutt found the following: a pair of dark pants with 2-3 sandwich baggies with the corners removed in a front pocket and other clothing including a second pair of pants. She gave this second pair of pants to appellant. He put them on with the aid of another officer. Detective Hocutt observed that both pairs of pants were similar in size and that Donald was smaller than appellant.

Officer Scott found the following: on the bed—two Tramadol pills, on the chest—two scales, two handguns, a bag of cocaine, and a document identifying appellant. He noted that baggies with the corners removed "were scattered throughout the room on the floor mostly." As lead detective, Detective Hocutt was also informed of the following: three cell phones were found in Bedroom 2, a letter from the Division of Child Support Enforcement (DCSE) addressed to appellant at 2606 Broad Street[2] was found on top of the refrigerators in the kitchen, and the total amount of money seized from the residence was $4,391.

Detective Dashiell was responsible for collecting evidence and photographing the scene. He collected the following: from Bedroom 1—two handguns, a bag of cocaine, $11 found on the end of the bed, two scales, two Tramadol pills, and three cell phones, from Bedroom 2—three guns, and from the kitchen—money, a bottle of Tramadol pills, and three bags of cocaine.

Appellant was charged with: possession with the intent to distribute cocaine, second offense, possession of a firearm after having been previously convicted of a felony within the past 10 years, and possession of a Schedule I or Schedule II controlled substance while simultaneously possessing a firearm. At trial, the several officers testified to the events

---

[2] The address of the searched residence was 2602 Broad Street.

described above. And, according to the certificates of analysis, the drugs found were confirmed to be cocaine, and the pills found were confirmed to be Tramadol.

On cross-examination, Detective Dashiell admitted that in Bedroom 1, he did not collect the sandwich baggies, the document allegedly reflecting appellant's identity, the pants, or the credit or debit card. He did not photograph the room or the chest in their entirety and did not directly photograph the document found. Dashiell also admitted that in the kitchen, he did not collect the sandwich baggie box, the paystub, the DCSE letter, or the debit or credit card. He also did not photograph the entire room, but he did directly photograph the paystub and the DCSE letter, clearly reflecting appellant's identity.

In addition, the Commonwealth's expert, Detective Beha, testified that the evidence found "[was] not consistent with personal use." He explained the presence of sandwich baggies or pieces of baggies in the residence. According to Beha, drugs are placed in the corner of the bag, the bag is tied off, and the excess plastic is removed. He also noted that it is typical for distributors to carry firearms for protection.

After presenting Detective Beha's testimony, the Commonwealth rested.

Appellant made a motion to strike all three charges, arguing that the Commonwealth did not prove he constructively possessed the items recovered. The trial court took the motion under advisement.

Appellant elected not to testify and rested his case.

The trial court heard closing arguments and then requested additional argument on the "nexus" between appellant and Bedroom 1. The Commonwealth highlighted that the two pairs of pants found were similar in size – one had 2-3 baggies with the corners removed in its front pocket while the other was given to appellant to wear; and the document allegedly identifying appellant as an occupant of the residence was located on the chest next to the cocaine and

firearms. Appellant replied that the photographs did not show appellant's name on the document and that the witnesses could not remember examining the document and locating appellant's name. The trial court stated that the "dilemma" was that there was no evidence regarding when appellant was last present in Bedroom 1.

In its ruling, the trial court stated that "it [was] convinced beyond a reasonable doubt that . . . there was a drug-dealing operation going on out of that facility." The trial court was further "convinced beyond a reasonable doubt that there[ wa]s a certain and sufficient connection with [appellant] to those drugs and to that operation." The trial court also found that "[appellant] was aware of the nature of the drugs and was also aware of the circumstances surrounding the evidence presented by way of having substantiated the fact of possession with intent to distribute." The trial court supported this conclusion by stating that cocaine and a large sum of money connected to appellant were found in the kitchen. The trial court then stated that although there was evidence that appellant had been in Bedroom 1 and that information belonging to him was found there along with cocaine, "[the trial court has] no evidence . . . when the last time [appellant] was in [Bedroom 1], or how the [firearms] got there, and [it could not] . . . find sufficient evidence to connect [appellant] . . . beyond a reasonable doubt[] to the [firearms]." Accordingly, the trial court found appellant guilty of possession with intent to distribute cocaine, second offense but not guilty of either firearm-related offense.

Appellant was sentenced to ten years' incarceration with seven years suspended.

ANALYSIS

A. SUFFICIENCY

We note that

> [a] motion to strike challenges whether the evidence is
> sufficient. . . . Whether the evidence adduced is sufficient to prove
> each of th[e] elements is a factual finding, which will not be set
> aside on appeal unless it is plainly wrong. In reviewing that

factual finding, we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom. After so viewing the evidence, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In sum, if there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial.

Vay v. Commonwealth, 67 Va. App. 236, 249, 795 S.E.2d 495, 501 (2017) (quoting Linnon v. Commonwealth, 287 Va. 92, 98, 752 S.E.2d 822, 825-26 (2014) (citation omitted)). "This familiar standard gives full play to the responsibility of the [trial court] . . . to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Burrell v. Commonwealth, 58 Va. App. 417, 434, 710 S.E.2d 509, 517 (2011) (quoting Brown v. Commonwealth, 56 Va. App. 178, 185, 692 S.E.2d 271, 274 (2010)).

Appellant was convicted of possession with the intent to distribute cocaine, second offense, pursuant to Code § 18.2-248(C).[3] Subsection (A) defines the prohibited conduct while subsection (C) sets forth the range of punishment. Code § 18.2-248(A) and (C). According to subsection (A), it is "unlawful for any person[, except as authorized in the Drug Control Act,] to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance." Code § 18.2-248(A).

Appellant argues that the Commonwealth did not prove he constructively possessed the narcotics found in the residence. Appellant contends that his occupancy of the residence, proximity to the drugs, and presence of the documents bearing his name in the kitchen were not sufficient to prove he committed the offenses he was found guilty of. Appellant supports his argument citing the cases of Pemberton v. Commonwealth, 17 Va. App. 651, 440 S.E.2d 420

_____

[3] Appellant clarified at oral argument that this conviction is confined to the cocaine found in the kitchen.

(1994), Boley v. Commonwealth, No. 1943-95-1, 1996 Va. App. LEXIS 521 (Va. Ct. App. July 23, 1996), and Cordon v. Commonwealth, 280 Va. 691, 701 S.E.2d 803 (2010), and distinguishes the present facts from those in Lunceford v. Commonwealth, No. 0608-05-1, 2006 Va. App. LEXIS 98 (Va. Ct. App. Mar. 21, 2006).

"[T]he Commonwealth may prove possession of a controlled substance by showing either actual or constructive possession." Kelly v. Commonwealth, 41 Va. App. 250, 260, 584 S.E.2d 444, 449 (2003) (*en banc*) (quoting Barlow v. Commonwealth, 26 Va. App. 421, 429, 494 S.E.2d 901, 904 (1998)). "To support a conviction based upon constructive possession [of illegal drugs,] the Commonwealth must point to evidence of acts, statements, or conduct of [appellant] or other facts or circumstances which tend to show that [appellant] was aware of both the presence or the character of the substance and that it was subject to his dominion and control." McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399-400 (2009) (quoting Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986)). Constructive possession may be proven with circumstantial evidence. See Cordon, 280 Va. at 694, 701 S.E.2d at 805. "[T]here is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence. The finder of fact is entitled to consider all of the evidence, without distinction, in reaching its determination." Kelly, 41 Va. App. at 258, 584 S.E.2d at 447 (quoting Commonwealth v. Hudson, 265 Va. 505, 512-13, 578 S.E.2d 781, 785 (2003)). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Id. at 259, 584 S.E.2d at 448.

> "[A]ll necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983) (internal quotation marks and citations omitted). Additionally, "[w]hile a conviction may properly be based upon circumstantial evidence . . . [t]here must be

> an unbroken chain of circumstances proving the guilt of the accused to the exclusion of any other rational hypothesis and to a moral certainty." Gordon v. Commonwealth, 212 Va. 298, 300, 183 S.E.2d 735, 737 (1971) (quoting Brown v. Commonwealth, 211 Va. 252, 255, 176 S.E.2d 813, 815 (1970)).

McMillan, 277 Va. at 19, 671 S.E.2d at 400.

Appellant compares his case to Pemberton, Boley, and Cordon. In Pemberton, an officer found the defendant in an upstairs bathroom of a single-family home; he was the only one in that room. 17 Va. App. at 652-53, 440 S.E.2d at 421. Four to five other individuals were in the upstairs area, which included a bedroom, living room, and kitchen. Id. Pemberton was seen rubbing his hands on his pockets in front of a trash can containing drugs although he did not look into the trash can. Id. Another individual had run out of the house through the kitchen door. Id. Pemberton was a visitor at the residence and denied owning the drugs. Id. at 653, 440 S.E.2d at 422. This Court reversed Pemberton's possession conviction because the evidence "d[id] not prove that [defendant] was familiar with drugs or that he was looking directly into the trash can." Id. at 654, 440 S.E.2d at 422. Further, the hypothesis that the "person who fled through the kitchen [and] . . . discarded the drugs in the trash can on his way [out of the residence]" was not disproved. Id. at 655, 440 S.E.2d at 422.

In Boley, the defendant was found showering "in the hall bathroom of an apartment" that he shared with three others, including his brother. 1996 Va. App. LEXIS 521, at *2. Officers found three firearms, a bag of marijuana, boxes of ammunition, $760 in cash, and plastic bags "in bedrooms and closets." Id. In the living room, officers "found cocaine, a digital pager, and approximately 140 . . . plastic bags" "on or near a 'speaker.'" Id. at *2-3. Beside the speaker was "a 'vinyl case' for electronic scales, $90 in cash, two cellular telephones and batteries, a key ring [on which there was a key to the apartment], and a shoe containing thirteen individual plastic bags of marijuana." Id. at *3. "A pager and 'some jewelry' were also found 'on a box in

the hallway.'" Id. Boley admitted that the "phone, money, keys, and some jewelry . . . laying on the floor next to the speaker" were his. Id. These items were located "a 'foot or less' from the cocaine and 'six or seven feet' from the closeted guns." Id. Evidence "suggested" that Boley's brother lived in the apartment and a witness testified to seeing Boley at the residence twice over a period of six months. Id. This Court reversed Boley's convictions, which included possession with the intent to distribute cocaine, finding that Boley had no ownership or possessory interest in the apartment and that the drugs were not subject to his dominion and control. Id. at *5-6. This Court concluded that the evidence only established that Boley "entered the living room and bathroom." Id. at *5. There was nothing in the record, other than his "presence, []proximity of his property to contraband, and [possessing] a key to the apartment relat[ing] him to the offenses." Id.

In Cordon, an officer gave Cordon his card when investigating a residence that had been burglarized. 280 Va. at 693, 701 S.E.2d at 805. The residence belonged to Cordon's uncle, but Cordon lived there at the time. Id. Cordon showed the officer the room where he had been staying. Id. As part of the investigation, Cordon had completed a written statement about the burglary, noting that he lived in Newport News. Id. Two days later, a search warrant was executed on the residence. Id. at 693, 701 S.E.2d at 804. Cordon was not present. Id. Officers found the following in his room: identifying documents, a cooler containing two bags of cocaine and other paraphernalia, and in a nightstand was the officer's card, a bag filled with a "white powdery substance," bullets, and additional paraphernalia. Id. at 693, 701 S.E.2d at 805. The Supreme Court reversed his conviction for possession of cocaine because the evidence did not prove "beyond a reasonable doubt . . . that [the defendant] knew that cocaine was in the cooler in the bedroom and that it was subject to his dominion and control." Id. at 696, 701 S.E.2d at 806.

He was not in the residence when the drugs were found, and "[t]here was no other physical evidence linking [him] to the contraband." Id.

Appellant attempts to distinguish his case from Lunceford. As officers approached a residence, one of the individuals on the porch ran inside, and the officers followed that individual. 2006 Va. App. LEXIS 98, at *2. Another individual, Lunceford, was seen exiting the kitchen and was subsequently handcuffed. Id. He and the man that ran inside were the only individuals in the residence. Id. Officers found $125 on Lunceford in the following denominations—a hundred, a twenty, and a five-dollar bill. Id. Fifty cut baggies were also found throughout the residence. In addition, Lunceford was the only occupant in the downstairs area of the residence, and he was seen leaving the kitchen, which is where officers found a scale covered in cocaine residue, and in plain view, a firearm and bullets. Id. at *9. Further, officers found a picture of Lunceford and bullets in an upstairs bedroom, and in the living room, documents belonging to him were found amongst a razor blade, bullets, and baggie corners. Id. When confronted with these findings, Lunceford said "he didn't know anything about any of them." Id. at *3. Based upon this evidence, Lunceford was found guilty. This Court affirmed his conviction, finding that Lunceford was aware of and had dominion and control over the drugs. Id. at *11.

In the instant case, we find that the trial court did not err in denying appellant's motion to strike. Appellant cites Pemberton and Boley as supporting his appeal, but they are distinguishable. In Pemberton, unlike appellant's case, this Court indicated that the Commonwealth's evidence did not disprove the hypothesis that another individual, who was seen running through and out of the residence, disposed of the drugs. This case is also unlike Boley because two documents identifying appellant were found among drugs and paraphernalia in the kitchen. Moreover, unlike the defendant in Cordon, appellant was apprehended in the

residence.  Lunceford is analogous to the present facts.  Though not seen exiting the kitchen, documents addressed to appellant were found there along with three bags of cocaine and drug paraphernalia, which were located in plain view in a common area.

We note that the trial court ruled that appellant constructively possessed the cocaine.  The trial court specifically found that appellant was aware of the cocaine.  Accordingly, the trial court implicitly found that appellant also exercised dominion and control over the cocaine.  However, because appellant did not act, make statements, or exhibit conduct indicative of awareness, we now turn to "other facts or circumstances."  McMillan, 277 Va. at 19, 671 S.E.2d at 399-400 (quoting Drew, 230 Va. at 473, 338 S.E.2d at 845).

First, we consider ownership or occupancy of a residence.  See Jordan v. Commonwealth, 273 Va. 639, 645-46, 643 S.E.2d 166, 170 (2007).  Appellant was found standing in a hallway near Room 7, the bathroom, and Bedroom 1 in a state of undress in the early morning hours, and the only other residents were Terry and Donald.  Items allegedly belonging to appellant were found in Bedroom 1, including two pairs of pants—one of which he was given to wear, and a document allegedly addressed to appellant.  We also note the presence of personal documents addressed to appellant found in the kitchen.  Appellant's paystub was dated September 11, 2015, and the DCSE letter was dated November 1, 2015.  The presence of these documents supports the inference that appellant resided in or at least frequented this residence

We also consider appellant's proximity to the cocaine.  Kelly, 41 Va. App. at 260, 584 S.E.2d at 449 (quoting Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 832 (1997) (citation omitted)).  Personal documents addressed to appellant found in the kitchen were in close proximity to the cocaine found there.  A paystub and DCSE letter addressed to appellant were found on top of the refrigerators along with three bags of cocaine, scales, loose money, and baggies with the corners removed.  We also note that the cocaine and drug paraphernalia were in

plain view, were easily accessible, and were in a common area. See Smallwood v.

Commonwealth, 278 Va. 625, 688 S.E.2d 154 (2009) (noting that a firearm sitting on the console

by the defendant's leg in plain view was subject to the defendant's dominion and control) (citing

Bolden v. Commonwealth, 275 Va. 144, 149, 654 S.E.2d 584, 586 (2008)), and Wymer v.

Commonwealth, 12 Va. App. 294, 300-01, 403 S.E.2d 702, 706-07 (1991) (noting that the

presence of drugs and drug paraphernalia in common areas of the residence was a relevant factor

that the trial court considered in its constructive possession analysis). Although not convicted of

an offense related to the cocaine found in Bedroom 1, we note that appellant was in close

proximity to that room, which also contained cocaine, Tramadol pills, scales, money, firearms, a

document allegedly belonging to appellant, in addition to the two pairs of pants-one of which

contained 2-3 baggies with the corners removed in the front pocket.

Two relevant factors before us also support the inference that the cocaine was jointly

possessed: Donald and Terry are the only other occupants of the residence and the cocaine was

found in a common area. See Kelly, 41 Va. App. at 260, 584 S.E.2d at 449 (noting possession

may be joint) (quoting Archer, 225 Va. at 418, 303 S.E.2d at 863). However, in the kitchen, the

documents bearing appellant's name were found on the same surface as the three bags of

cocaine. There were no other personal documents in the kitchen. This supports the inference

that appellant alone possessed the cocaine.

The trial court was not plainly wrong in finding appellant guilty beyond a reasonable

doubt as there was ample evidence to support the trial court's determination.

## B. INCONSISTENT VERDICTS

"[A] trial court may not render inconsistent verdicts in the guilt phase of a bench trial."

Commonwealth v. Greer, 63 Va. App. 561, 570, 760 S.E.2d 132, 136 (2014). An inconsistent

verdict is one where "the essential elements in the count wherein the accused is acquitted are

identical and necessary to proof of conviction on the guilt count." Akers v. Commonwealth, 31

Va. App. 521, 532 n.3, 525 S.E.2d 13, 18 n.3 (2000). In Akers, "we adopted the rationale of the

Maryland Court of Appeals for addressing inconsistencies in verdicts rendered by a trial [court]"

as stated in Shell v. State, 512 A.2d 358 (Md. 1986):

> "[c]onvictions based on inconsistent jury verdicts are tolerated
> because of the singular role of the jury in the criminal justice
> system. . . . There is a 'reluctance to interfere, with the results of
> unknown jury interplay,' at least without proof of 'actual
> irregularity.'. . . Inconsistencies may be the product of lenity,
> mistake, or a compromise to reach unanimity, and . . . the continual
> correction of such matters would undermine the historic role of the
> jury as arbiter of questions put to it."

Cleveland v. Commonwealth, 38 Va. App. 199, 203-04, 562 S.E.2d 696, 698 (2002) (quoting

Akers, 31 Va. App. at 531, 525 S.E.2d at 18).

However, when

> inconsistent verdicts [are] rendered by a trial [court], not by a
> jury[, the above rationale] does not justify inconsistent verdicts for
> a trial [court.]
>
> . . . .
>
> There is no need to permit inconsistency . . . so that the [trial court]
> may reach unanimity with [it]self; on the contrary, [it] should be
> forbidden this easy method for resolving doubts. . . . We do not
> believe we would enhance respect for the law or for the courts by
> recognizing for a judge the same right to indulge in "vagaries" in
> the disposition of criminal charges that, for historic reasons, has
> been granted the jury.

Id. at 204, 562 S.E.2d at 698.

We also recognized that the Maryland Court of Appeals held in Johnson v. State, 209

A.2d 765, 773 (Md. 1965), "that an inconsistent verdict would be sustained 'where the trial

[court] on the record explains an apparent inconsistency in the verdicts, and where the

explanation shows that the trial court's action was "proper" and that there was no "unfairness."'"

- 13 -

Cleveland, 38 Va. App. at 204, 562 S.E.2d at 698 (quoting Akers, 31 Va. App. at 532 n.5, 525 S.E.2d at 18 n.5).

The trial court did not render inconsistent verdicts. Appellant was convicted of a violation of Code § 18.2-248(C) and acquitted of alleged violations of Code §§ 18.2-308.2 and -308.4(A). To sustain a conviction pursuant to Code § 18.2-248(C), the Commonwealth "must establish both that the defendant committed conduct prohibited by subsection (A)[–that appellant possessed a controlled substance with the intent to distribute that substance–] and that the substance involved was classified [as] Schedule I or II." Mason v. Commonwealth, 64 Va. App. 599, 607, 770 S.E.2d 224, 228 (2015). To sustain a conviction pursuant to Code § 18.2-308.2, the Commonwealth must show that the defendant "has been convicted of a felony . . . [and that he] knowingly and intentionally possess[ed] or transport[ed] any firearm." Code § 18.2-308.2(A). To sustain a conviction pursuant to Code § 18.2-308.4(A), the Commonwealth must prove possession of a firearm while in simultaneous possession of certain controlled substances. The "essential elements" of these offenses are not "identical."[4] Accordingly, when the trial court convicted appellant of a violation of Code § 18.2-248(C) but not of Code §§ 18.2-308.2 and -308.4(A), it did not render inconsistent verdicts.

Assuming for the sake of argument that there may be a suggestion of inconsistency in the verdicts, the trial court explained the inconsistency on the record. In this regard, in the kitchen, officers discovered three bags of cocaine, money, and a paystub and DCSE letter identifying appellant. Photographs in evidence clearly depict appellant's name on both documents. In

---

[4] Appellant suggests that United States v. Maybury, 274 F.2d 899, 903 (2d Cir. 1960), is law in this jurisdiction. In that case, a broader definition of inconsistent verdicts is advanced: an inconsistent verdict is also one in which the elements of the offenses are distinct but the evidence overlaps significantly. See Akers, 31 Va. App. at 529 n.3, 525 S.E.2d at 17 n.3. An inconsistent verdict would result if the trial court interpreted the evidence one way in convicting an individual of one offense and a different way in acquitting an individual of another offense. Id. That broader definition has not been adopted in Virginia.

Bedroom 1, however, officers found two firearms on a chest positioned next to a bag of cocaine, scales, and a document allegedly identifying appellant. On the floor, two pairs of pants were found—one of which contained 2-3 baggies with the corners removed in a front pocket and the other was given to appellant to wear. Moreover, although there were no photographs in evidence showing more particular identifying information regarding appellant on that document, there was testimony referencing that information on the document.

Considering all of the evidence, the trial court concluded that it was clear appellant was engaged in a "distribution operation" and convicted appellant of possession with intent to distribute cocaine, second offense, pursuant to Code § 18.2-248(C), for the cocaine found in the kitchen. Regarding Bedroom 1, the trial court explained that although "cocaine[, firearms,] and perhaps some items belonging to [appellant were found there,] . . . we don't know when he was last in that room . . . or how the [firearms] got there." Thus, it could not "find sufficient evidence to connect [appellant] sufficiently, beyond a reasonable doubt to the [firearms]." The trial court acquitted appellant on the Code §§ 18.2-308.2 and -308.4(A) charges. Any perceived inconsistency in the verdicts was explained on the record by the trial court articulating cogently and precisely why there was a sufficient nexus between appellant and the cocaine in the kitchen but not a sufficient nexus between appellant and the cocaine or firearms found in Bedroom 1.

The trial court did not render inconsistent verdicts.

CONCLUSION

The trial court did not err in denying appellant's motion to strike. The trial court was not plainly wrong and had evidence to support its determination that appellant constructively possessed the cocaine; thus, the evidence was sufficient to convict appellant of violating Code

§ 18.2-248(C).  In addition, the trial court did not render inconsistent verdicts.  The evidence supported the discrete verdicts reached by the factfinder.

Affirmed.