Present: Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and Millette, JJ., and Lacy, S.J.

HUGH LINCOLN CORDON, JR.

v. Record No. 092592

COMMONWEALTH OF VIRGINIA

OPINION BY SENIOR JUSTICE
ELIZABETH B. LACY
NOVEMBER 4, 2010

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, Hugh Lincoln Cordon, Jr., asks us to reverse the judgment of the Court of Appeals affirming his conviction for possession of cocaine, arguing that the evidence was insufficient to support his conviction. Because we conclude that the evidence was insufficient to establish constructive possession of cocaine, we will reverse the judgment of the Court of Appeals.

FACTS

On November 20, 2007, Detective John Baer of the Hampton Police Department executed a search warrant at a house located at 169 Finley Square in the City of Hampton. Cordon was not at the house, but Donald Whitmeyer, Cordon's uncle and owner of the house, was present during the execution of the warrant. Baer found a cooler in one of the bedrooms containing two bags of suspected powder cocaine, numerous baggies, and drug paraphernalia inside. A Certificate of Analysis subsequently showed that one of the bags contained 5.001 grams of powder cocaine.

While in the bedroom Baer also found "some checks and some papers and stuff" containing Cordon's name.  In a nightstand in the bedroom, Baer found a box of bullets, a digital scale, a bag of white powdery substance, a knife, glass "test-tube type things," a wooden crusher, a torch, and a marijuana pipe.  The nightstand drawer also contained Baer's business card.

Baer had given Cordon a business card two days prior to executing the search warrant while investigating a burglary at the house that occurred the previous September.  In the course of the burglary investigation, Cordon told Baer and another investigating officer that his uncle owned the house, but was away and Cordon was living at the house.  Cordon showed the officers "his" bedroom but told him that nothing was missing.  Cordon later told Baer that a lockbox was taken from underneath "his bed."  In his handwritten statement regarding the burglary, Cordon listed an address in Newport News as his residence.  The bedroom Cordon referred to as "his" during the burglary investigation was the bedroom containing the cooler and nightstand searched by Baer when executing the search warrant.

On November 27, 2007, Baer interviewed Cordon and told him that he found drugs and drug paraphernalia and Baer's card in the bedroom at the Finley Square house that Cordon had previously described as "his" bedroom.  Cordon denied living at the house and terminated the conversation.

2

Cordon was indicted for possession of cocaine in violation of Code § 18.2-250 and convicted by the Circuit Court of the City of Hampton. He was sentenced to three years imprisonment with two years and six months suspended. The Court of Appeals affirmed his conviction. Cordon v. Commonwealth, Record No. 1724-08-1 (Dec. 1, 2009)(unpublished). Cordon filed a timely appeal with this Court arguing that the evidence was insufficient to establish that he possessed the cocaine found in the cooler of a bedroom in the Finley Square house.

DISCUSSION

To support a conviction for possession of cocaine in this case, the Commonwealth was required to establish that Cordon constructively possessed the cocaine. Constructive possession of cocaine requires a showing that the presence and character of the substance was known to the defendant and that the substance was subject to his dominion and control. Lane v. Commonwealth, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982). Thus, the Commonwealth was required to produce evidence demonstrating beyond a reasonable doubt that Cordon knew that cocaine was in the cooler in the bedroom and that the cooler was subject to his dominion and control. Furthermore, to establish constructive possession of cocaine through circumstantial evidence, all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable

3

hypothesis of innocence.  Rogers v. Commonwealth, 242 Va. 307, 317, 410 S.E.2d 621, 627 (1991) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976)).  Finally, under well-established principles, when considering the sufficiency of the evidence to support a conviction, we review the evidence in the light most favorable to the Commonwealth.  Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).  The judgment of conviction will be reversed only when the ruling is plainly wrong or without evidence to support it.  Id.

The Commonwealth, relying on Rawls v. Commonwealth, 272 Va. 334, 634 S.E.2d 697 (2006), asserts that Cordon's repeated references to the bedroom in which the cocaine was found as "his" bedroom and subsequent denial that he was living at the house when the police told him that drugs were found in the room, allowed the trier of fact to conclude that Cordon was lying to conceal his guilt and that this conduct tended to show Cordon's knowledge of the presence and character of the cocaine. The Commonwealth argues that such conduct, along with Cordon's personal effects and Baer's business card found in the room, was sufficient to support a finding that Cordon knowingly possessed cocaine in that bedroom.  We disagree.

This Court has recognized that if a defendant's denial of circumstances relating to an illegal act is inconsistent with previous statements or facts, it is fair to infer that such

4

denial was for the purposes of concealing guilt.  Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004) ("false or evasive account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge").  In cases involving possession of contraband, such an inference qualifies as evidence that tends to show that the defendant was aware of the contraband and that it was subject to his dominion and control.  Rawls, 272 Va. at 349-50, 634 S.E.2d at 705; Lane, 223 Va. at 716-17, 292 S.E.2d at 360.  For example, in Rawls the defendant was in a bedroom with the door closed when the police arrived to arrest him for a probation violation.  272 Va. at 341, 634 S.E.2d at 700.  When Rawls opened the door, he appeared to have been sleeping.  Id.  When told of the warrant for his arrest, Rawls "[i]mmediately" denied that the bedroom was his.  Id.  The police searched the room and found a loaded handgun between the mattress and box spring.  Id. at 342, 634 S.E.2d at 700.  The facts also showed that articles of clothing found in the room belonged to Rawls, Rawls apparently had been sleeping on the bed where the handgun was found when the police arrived, he was alone in the bedroom with the handgun, and other residents of the house testified that the bedroom was Rawls' bedroom.  Id. at 341-42, 634 S.E.2d at 700.  In reciting that Rawls' denial of ownership of the room could support a conclusion that Rawls was

5

lying to conceal his guilt, the Court observed that this conclusion was "[b]ased on the substantial evidence that the room in fact did belong to Rawls." Id. at 350, 634 S.E.2d at 705. Ultimately, this Court concluded that the Commonwealth met its burden of proof "by demonstrating Rawls' presence in his own bedroom and the presence of the firearm at the time, along with the other circumstances suggesting his possession of the firearm." Id. at 350-51, 634 S.E.2d at 705.

In Lane, the defendant owned and occupied the dwelling in which the contraband was found. 223 Va. at 715, 292 S.E.2d at 359. Lane was present during the execution of the search warrant and "became 'fidgetive'" when an officer approached the chair in which she was sitting. Id. at 716, 292 S.E.2d at 359. When a large amount of methaqualone pills were found in a white plastic bag behind the chair, Lane denied any knowledge of the contraband. Id. at 716, 292 S.E.2d at 360. Again, the inference of guilt based on the defendant's denial and its tendency to show knowledge and control of the contraband was accompanied by significant evidence connecting the defendant to the contraband. Id.

In this case, Cordon was not in the house or the bedroom when the cooler containing the cocaine was discovered. There was no other physical evidence linking Cordon to the cooler or the contraband. The record showed that two days had passed

6

between the time Cordon was known to be at the Finley Square house and the seizure of the cooler containing cocaine. While he referred to the bedroom as "his" and stated that he was staying there while his uncle was away at the time of the September burglary, Cordon listed his address as a location in Newport News. There was no evidence of ownership of the cooler, a very portable item, and no evidence placed Cordon at the house at any time between the day he received Baer's business card and the day the search warrant was executed. Although Cordon, like Rawls, denied that he "lived" at the Finley Square house when informed that cocaine was found in a cooler in "his" bedroom, assuming his denial gave rise to an inference that he was lying to conceal guilt and thus tended to show his knowledge and control of the cocaine, that inference along with the remaining evidence falls far short of the evidence considered sufficient in Rawls or Lane to support the convictions in those cases. While the circumstantial evidence in this case may be sufficient to raise a suspicion of guilt, it cannot support a conclusion beyond a reasonable doubt, by a rational trier of fact, that Cordon knew that cocaine was in the cooler in the bedroom and that it was subject to his dominion and control. Accordingly, we will reverse the judgment of the Court of Appeals and vacate the conviction.

Reversed and final judgment.

JUSTICE KINSER, with whom JUSTICE LEMONS and JUSTICE MILLETTE join, dissenting.

In reversing the judgment of the Court of Appeals and vacating Cordon's conviction for possession of cocaine, the majority holds that "no 'rational trier of fact could have found . . . beyond a reasonable doubt' " that Cordon " 'was aware of both the presence and character of the substance and that it was subject to his dominion and control.' "  Maxwell v. Commonwealth, 275 Va. 437, 442-43, 657 S.E.2d 499, 502-03 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) and Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986), respectively).  Upon viewing the evidence in the light most favorable to the Commonwealth, I am persuaded that the evidence was not insufficient as a matter of law to establish Cordon's guilt of the charged offense.  Thus, I respectfully dissent.

When the sufficiency of the evidence is challenged on appeal, the issue is "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "  Maxwell, 275 Va. at 442, 657 S.E.2d at 502 (quoting Jackson, 443 U.S. at 319).  This inquiry, however, "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' "  Jackson, 443 U.S. at 318-19 (quoting

8

Woodby v. INS, 385 U.S. 276, 282 (1966)).  On the contrary, " '[i]f there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.' "  Clark v. Commonwealth, 279 Va. 636, 641, 691 S.E.2d 786, 788 (2010) (quoting Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998)).

When as here, a defendant waives the right to a jury trial and is tried in a bench trial, the trial court's "factual findings are entitled to the same weight as that accorded a jury verdict and will not be disturbed on appeal unless plainly wrong or without evidence to support them."  Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736 (1985).  "This is so because the credibility of witnesses and the weight accorded their testimony are matters solely for the fact[-] finder who has the opportunity of seeing and hearing the witnesses."  Id. at 382, 337 S.E.2d at 736-37; accord Young v. Commonwealth, 275 Va. 587, 590, 659 S.E.2d 308, 310 (2008) ("On appeal, great deference is given to the fact[-]finder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony.").  And, as this Court reiterates today, though not here, "[t]hat deference applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts

proved." Sullivan v. Commonwealth, 280 Va. ___, ___, ___ S.E.2d ___, ___ (2010) (this day decided).

As the majority notes, to establish Cordon's guilt of cocaine possession, the Commonwealth had to prove "that the presence and character of the substance was known to the defendant and subject to his dominion and control." (Citing Lane v. Commonwealth, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982).) Knowledge "may be shown by evidence of the acts, statements or conduct of the accused." Young, 275 Va. at 591, 659 S.E.2d at 310. "While the Commonwealth does not meet its burden of proof simply by showing the defendant's proximity to the [drugs] or ownership or occupancy of the premises where the [drugs are] found, these are circumstances probative of possession and may be considered as factors in determining whether the defendant possessed the [drugs]." Rawls v. Commonwealth, 272 Va. 334, 350, 634 S.E.2d 697, 705 (2006).

The majority further states that when the Commonwealth relies on circumstantial evidence to carry its burden of proof, the circumstances proved "must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." (Citing Rogers v. Commonwealth, 242 Va. 307, 317, 410 S.E.2d 621, 627 (1991).) "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth

10

has the burden of proof beyond a reasonable doubt."  Hudson v.

Commonwealth, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003)

(citing Cox v. Commonwealth, 140 Va. 513, 517, 125 S.E. 139, 141

(1924)).  Thus, in reviewing the sufficiency of the

circumstantial evidence in this appeal, the issue "is not

whether 'there is some evidence to support' [Cordon's]

hypotheses" of innocence.  Id.  Instead, "[t]he issue is whether

a reasonable [trier of fact], upon consideration of all the

evidence, could have rejected [Cordon's] theories in his defense

and found him guilty of [cocaine possession] beyond a reasonable

doubt."  Id.

In this case, the trier of fact had the following evidence

to consider.  When seeking the assistance of an officer of the

"Hampton Police Division" regarding a home invasion that

occurred at 169 Finley Square on September 29, 2007, Cordon

stated to the responding police officer that the house was his

"home," where he was residing "at the time."  Cordon had also

told the responding officer that the room in which the cocaine

was subsequently found "was his room."  Later, on November 14,

2007, during a phone interview with Detective John Baer, Cordon

again referred to the residence as his "home," and reported that

"a lock box from underneath his bed had been stolen."  (Emphasis

added.)  And again, on November 18, 2007, Cordon reiterated to

Detective Baer, who was present at the residence, that "a

11

lockbox from underneath his bed" had been stolen, and "advised that [the intruders had] pried his bedroom door open," directing the detective to the room in which the cocaine was found two days later. Before leaving the residence that day, Detective Baer gave Cordon his business card.

As the majority states, the search of the bedroom claimed by Cordon as "his room" revealed cocaine, "checks and some papers and stuff with [Cordon's] name on it," and numerous items of drug paraphernalia. The drug paraphernalia was found in a drawer of a nightstand abutting Cordon's bed. In the same drawer, Detective Baer's business card was discovered. Detective Baer testified that "[w]hen [he] initially opened the [nightstand] door, [his] business card was sitting right inside the drawer next to all these items" of drug paraphernalia. In a subsequent interview with Cordon, only after Detective Baer "advised [Cordon] of what items [had been] located in [Cordon's] bedroom" did Cordon "den[y] living at 169 Finley Square." According to Detective Baer, Cordon ended the interview when Detective Baer told him that the business card was found in the nightstand drawer with the drug paraphernalia.

Upon viewing the evidence "in the light most favorable to the Commonwealth, the prevailing party at trial," Rawls, 272 Va. at 349, 634 S.E.2d at 704, and deferring to the trial court's factual findings and all reasonable inferences drawn from those

12

facts, Young, 275 Va. at 590, 659 S.E.2d at 310, all of which an appellate court must do, I am unable to say that no rational trier of fact could have concluded Cordon possessed the cocaine recovered from "his room."  Moreover, Cordon's denial that he lived at 169 Finley Square after being confronted with the items seized during the search of "his room" bolsters the inference that Cordon " 'intentionally and consciously possessed [the cocaine] with knowledge of its nature and character.' "  Young, 275 Va. at 591, 659 S.E.2d at 310 (quoting Burton v. Commonwealth, 215 Va. 711, 713, 213 S.E.2d 757, 759 (1975)).  As the majority acknowledges, "if a defendant's denial of circumstances relating to an illegal act is inconsistent with previous statements or facts, it is fair to infer that such denial was for the purposes of concealing guilt."

The majority nonetheless concludes, even "assuming [Cordon's] denial gave rise to an inference that he was lying to conceal . . . his knowledge and control of the cocaine, that inference along with the remaining evidence falls far short of the evidence considered sufficient in Rawls or Lane."  Presuming those cases set the evidentiary floor necessary to sustain a conviction for possession of an illegal drug, the majority's efforts to show that the evidence here "falls far short" of that in Rawls, 272 Va. 334, 634 S.E.2d 697 and Lane, 223 Va. 713, 292 S.E.2d 358, fails.

13

In discussing both cases, the majority states that the "inference of guilt based on the [respective] defendant's denial and its tendency to show knowledge and control of the contraband was accompanied by significant evidence connecting [that] defendant to the contraband." The "significant evidence" in Lane was the defendant's ownership and occupancy of the house where the drugs were found, coupled with her occupancy of a chair behind which the illegal substances were discovered, and the fact that she became "nervous and volunteered . . . that there was nothing behind the chair." 223 Va. at 716, 292 S.E.2d at 360. In Rawls, the "significant evidence" consisted of the following facts: the defendant was sleeping alone in a room with the door closed when the police arrived to serve a warrant for the defendant's arrest; a loaded handgun was found between the mattress and box spring; the defendant's roommates testified that the bedroom belonged to him; and the defendant's clothes were found in the room. Rawls, 272 Va. at 341-42, 350, 634 S.E.2d at 700, 705.

The evidence in each case also included a denial by the respective defendant. In Lane, the defendant denied any knowledge of the illegal drugs when confronted with them. 223 Va. at 716, 292 S.E.2d at 360. Similarly, in Rawls, the defendant "disclaimed ownership" of the bedroom when the police

14

told him they had an arrest warrant for a probation violation. 272 Va. at 350, 634 S.E.2d at 705.

Contrary to the majority's conclusion, the same type of evidence is present here. Cordon reported a burglary of the house where he acknowledged he was residing; in the process, he claimed that nothing was taken from "his room," only to later assert that an item was taken from "underneath his bed"; he again claimed the bedroom as his own when interviewed by Detective Baer at the residence two days prior to execution of the search warrant; and the search of the bedroom revealed papers bearing Cordon's name, and, in the nightstand, Detective Baer's business card alongside drug paraphernalia. These facts constitute "substantial evidence that the room in fact did belong to" Cordon. Cf. Rawls, 272 Va. at 350, 634 S.E.2d at 705. And, the cocaine was located inside a cooler that was readily observable to anyone entering the bedroom; the cocaine as well as the drug paraphernalia were located a short distance from where Cordon admitted to sleeping, the paraphernalia being found in a drawer with the business card Detective Baer had given Cordon two days prior to the search. Finally, Cordon, like the defendants in Lane and Rawls, evinced "guilty knowledge" by his denial that he resided at 169 Finley Square when confronted with the items seized from "his room" during the search.

15

Thus, like the trier of fact in Rawls, the trial court here reasonably could have inferred from Cordon's occupancy of the bedroom where the contraband was found that Cordon had "dominion and control" over the cocaine. 272 Va. at 350, 634 S.E.2d at 705. Further, the trial court reasonably could have concluded from Cordon's denial of occupancy that he "was lying to conceal his guilt," thereby demonstrating that he was aware of the cocaine's "presence and character." Id. Thus, I conclude that the evidence was sufficient to sustain the trial court's conclusion that Cordon "possessed" the cocaine.

Although Cordon was not present when the search warrant was executed, that factor alone does not mean the trial court could not reject Cordon's theory of defense. Certainly, one hypothesis of innocence is that another individual placed the cocaine in Cordon's bedroom without his knowledge. But the same possibility existed in Rawls, notwithstanding Rawls' presence in the bedroom where the firearm was found. Rawls could not have seen the firearm concealed underneath the mattress merely by being present in the bedroom. Acknowledging that evidence was adduced that "other individuals had unrestricted access to the bedroom" where the firearm was found in Rawls, this Court nonetheless concluded that there was sufficient evidence of possession because "such access is only a single factor to be considered among all of the circumstances." Id. As in Rawls,

16

the Commonwealth was not required to prove that Cordon had exclusive access to the bedroom.

For these reasons, I respectfully dissent.  I would affirm the judgment of the Court of Appeals.