COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff, Athey and Friedman
Argued by videoconference

JUSTIN TRE CARTER

MEMORANDUM OPINION[*] BY
v.        Record No. 0315-21-3        JUDGE FRANK K. FRIEDMAN
MARCH 15, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Charles N. Dorsey, Judge

Michelle C. F. Derrico (Copenhaver, Ellett & Derrico, on briefs), for
appellant.

Robin M. Nagel, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.

Justin Carter ("appellant") was convicted of possession with intent to distribute marijuana

and possession of ammunition by a convicted felon.  On appeal, he argues that there was

insufficient evidence to support his convictions, that the trial court erred in denying his motion to

suppress evidence, and that the trial court's erroneous convictions affected his probation

revocation, meriting remand and resentencing.  We reverse the convictions and remand for

resentencing on the probation revocation.

I.  Procedural History

On May 15, 2018, Roanoke County police executed a search warrant at 3480 Green

Ridge Court in Roanoke County, Virginia.  Based on their findings, Carter and Sydney Holland

("Holland") were charged with possession with intent to distribute marijuana.  Appellant, a

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

convicted felon, was also charged with possession of ammunition by a felon.  On May 15, 2018, appellant was already on supervised probation for a previous felony conviction.

A probation revocation hearing was held based on allegations that appellant had violated the terms of his probation unrelated to his new criminal charges.  The trial court found appellant in violation of his probation but took the revocation under advisement and ordered appellant to continue on supervised probation.  In June 2019, the Commonwealth filed a motion to impose judgment and sentencing on the revocation, alleging that appellant had again violated the terms of his probation.

Appellant filed a motion to suppress the evidence found pursuant to the search warrant, alleging that an illegal search had occurred.  This motion was denied.  Holland died before the suppression hearing and before the criminal charges went to a bench trial on August 19, 2020.  Appellant pled not guilty to both charges and was found guilty.

Subsequently, the trial court held a hearing at which appellant was sentenced on both the new criminal convictions and the pending probation revocation.  On each new conviction, appellant was sentenced to three years with two years and five months suspended, leaving an active sentence of seven months on each charge.  The court also revoked appellant's previously suspended sentence and then re-suspended all but three months.  This appeal follows.

## II.  Factual Background

### A Search of the Home Reveals Marijuana and Ammunition

Testimony presented at the suppression hearing showed that on May 15, 2018, Roanoke County Police Officer Morris responded to 3480 Green Ridge Court for a domestic call.  The record does not reveal the source of the call.  When Officer Morris arrived, she rang the house's doorbell, but no one answered.  A car pulled up in front of the house, and Officer Morris entered the street and approached the vehicle.  The driver, Carrie Ferguson ("Ferguson"), informed

Officer Morris that her daughter, Sydney Holland, lived at 3480 Green Ridge Court, that she had just spoken with Holland, and that Holland was fine. Officer Morris told Ferguson that she needed to speak with Holland to ensure her well-being.

At that time, Holland exited the home. She had multiple scratches on her neck, was missing some of her artificial nails, and appeared to be upset. She told Officer Morris that she had not called the police and that she did not "want them here." She also said that she had sustained her injuries from falling. Holland did not answer any of Officer Morris' other questions.

Holland wanted to go back into the house so that she could retrieve her two children. Officer Morris told Holland she could not enter the home out of concern for the officer's safety and that Officer Morris wanted to enter the home herself to check "the welfare of the children." Holland denied Officer Morris permission to enter the house.

After approximately ten minutes, "D.J." arrived at the home. While Ferguson and Officer Morris presented conflicting testimony as to the exact circumstances under which D.J. entered the house, both parties agreed that D.J. did go inside the house and returned with at least one of the children. Officer Morris was standing "[r]ight at the front door, right beside Ms. Holland" when D.J. entered the home.

According to Officer Morris' testimony, Holland then opened the front door to retrieve the second child, and Officer Morris, who was still standing on the front porch "right at the doorway," smelled the odor of marijuana. Officer Morris sought a search warrant for the home based on this odor. When the search warrant was executed, police found a bag containing 25.64 grams of unburned marijuana in a kitchen cabinet. Evidence presented at trial revealed that another kitchen cabinet contained two scales, an empty rubber band bag, "packaging supplies," and Ziploc bags. A vacuum sealer and a money counter were sitting next to each other on the

kitchen counter. Police also found three smoking devices, a marijuana grinder, and an ashtray containing marijuana residue.

In the master bedroom, police found a closed gun case containing paperwork for a firearm on the bedside table. They also found gun cleaning items and a box containing ammunition on that table. There were men's shoes on the floor next to the table, and Holland's wallet was on the bed.

Police also found a second gun case containing live ammunition inside a cabinet in the "dining/living room area." That cabinet also contained a book on welding. In January of 2018 —about four months before the search—appellant had told his probation officer that he was a full-time welding student at Virginia Western Community College.

Detective Boardwine of the Roanoke County Police Department testified at trial as an expert in narcotics use and distribution. He opined that the scales found inside the home indicated drug distribution, though he acknowledged that it is "not uncommon" for drug users to use scales to make sure they are not cheated by their dealers. He also testified that the smoking devices in the house were consistent with someone being both a user and a dealer, that multiple smoking devices indicated multiple users, and that the grinder indicated personal use of marijuana. He stated that possession of 25.64 grams of marijuana was inconsistent with personal use, particularly when considered along with the scales, packaging items, vacuum sealer, and money counter.

Detective Boardwine also testified that it is common for marijuana dealers to have a firearm or ammunition for protection. He opined that the empty rubber band bag, money counter, and vacuum sealer indicated drug distribution because rubber bands are used in narcotics distribution to bind money together, money counters are used by "people that deal in large amounts" to count money quickly and efficiently, and vacuum sealers are used to aid in

transporting drugs and concealing the odor of marijuana, particularly in larger quantities. However, he also noted that there was no evidence that the money counter, rubber band bag, or vacuum sealer had been used recently. The bag of marijuana had not been vacuum-sealed, and the police did not find any vacuum-sealed food in the home.

Danielle Dent, who shares a child with appellant, also testified at trial. She stated that she had lived at 3480 Green Ridge Court with appellant in 2016 when he was charged with a drug offense. As part of that charge, the house was searched by police, who found a vacuum sealer, a money counter, and two scales. Dent testified that she was sure that the vacuum sealer, money counter, and one of the scales were not seized by police; she was not sure whether the second scale was seized.

<u>No Evidence of Carter's Recent Presence in the Home; But Carter Does Have Ties to the House</u>

The prosecution failed to place Carter in or at 3480 Green Ridge Court at any point on May 15, 2018, nor did any evidence place him at the house at any time between May 13 through May 17, 2018. Kenya Reynolds, a friend of appellant's mother, testified at trial that in May 2018, appellant was living with Holland but that the couple was having problems and Carter stayed with Reynolds from May 13, 2018 until May 17, 2018. She stated that on those days, appellant spent the night at her house and was at her house "the majority of the time." The trial judge specifically found Reynolds' testimony to be credible.

There was, however, evidence tying appellant to 3480 Green Ridge Court. Paperwork from appellant's probation office, along with the business card of a probation officer, was found on the kitchen counter. This paperwork, which was dated October 2017, listed 3480 Green Ridge Court as appellant's address. At trial, the Commonwealth introduced evidence that Carter testified at his December 2018 probation revocation hearing that he had lived at 3480 Green Ridge Court since 2014. His probation officer further testified that the rules of appellant's

probation required him to report any change of address. Police also found a letter in the dining room from the Division of Child Support Enforcement ("DCSE"), dated February 2018, that was addressed to appellant at 3480 Green Ridge Court. Appellant listed 3480 Green Ridge Court as his address with the Department of Motor Vehicles in March 2018. There were also photographs of appellant and Holland found inside the home.

The trial court convicted Carter of both charges, noting that "the standard is not proof beyond all doubt" and finding that, based on the totality of the circumstances, there was sufficient evidence to find Carter guilty.

## III. Sufficiency of the Evidence

Appellant's first assignment of error alleges that "[t]he evidence was insufficient to convict [appellant] of the offenses charged." When reviewing the sufficiency of the evidence, the evidence must be considered in the light most favorable to the Commonwealth, and the judgment of the trial court may be reversed only when its decision "is plainly wrong or without evidence to support it." *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "[T]he relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (emphasis in original) (quoting *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017)). Furthermore, the appellate court must "discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018).

A.  Constructive Possession

1.  Acts, Statements or Conduct of the Accused

Both of appellant's convictions—possession with the intent to distribute marijuana and possession of ammunition by a felon—were based on the theory of constructive possession.

> Constructive possession . . . requires a showing that the presence and character of the substance was known to the defendant and that the substance was subject to his dominion and control. . . . Furthermore, to establish constructive possession . . . through circumstantial evidence, all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.

*Cordon v. Commonwealth*, 280 Va. 691, 694 (2010) (citation omitted).  "Knowledge of the presence and character of the controlled substance may be shown by evidence of the acts, statements or conduct of the accused.  Mere proximity to the controlled substance, however, is insufficient to establish possession."  *Eckhart v. Commonwealth*, 222 Va. 447, 450 (1981).

Here, Carter was not present when the search of the home was conducted.  The Commonwealth did not present any evidence of appellant's "acts, statements or conduct," *id.*, but focused its arguments instead on appellant's occupancy of the house at 3480 Green Ridge Court.[2]

2.  Ownership or Occupancy of the House Where Illegal Drugs or Ammunition are Found

Ownership or occupancy of the premises where a controlled substance is found "shall not create a presumption that such person either knowingly or intentionally possessed such controlled substance."  Code § 18.2-250.  However, occupancy of the premises "is a factor to be

---

[2] The Commonwealth did provide a statement from Carter at his revocation hearing in December 2018 that he had been living at this address over the past several years.  However, there were no statements, acts or conduct introduced relating to his presence at 3480 Green Ridge Court on the week of May 13 through May 17, 2018.

- 7 -

considered with other evidence in determining" whether constructive possession existed.

*Eckhart*, 222 Va. at 451.

> [I]n order for ownership or occupancy of property . . . to be sufficient to support the inference that the owner or occupant also possessed contraband that was located on the property . . . , the owner or occupant must be shown to have exercised dominion and control over the premises and to have known of the presence, nature, and character of the contraband at the time of such ownership or occupancy.

*Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992).

Many Virginia constructive possession cases focus on the defendant's ownership or occupancy of the space where illicit drugs are located. The cases, consistent with Code § 18.2-250, do not presume that a defendant exercised dominion and control over, and had knowledge of, contraband found in a residence simply based on the defendant's occupancy there. For example, in *Cordon*, 280 Va. at 693, cocaine was found in the bedroom of the defendant's uncle's house; the defendant was not present at the time of the search. The defendant had described that bedroom as being "his," and he told the police that he was living at the house while his uncle was away; however, he did not list the house as his address. *Id.* A police officer found paperwork with the defendant's name on it and the officer's own business card in the room where the cocaine was located; he had given the defendant his card two days prior to the search. *Id.* Two days had passed from the time the defendant was known to have been at the house and when the drugs were discovered. *Id.* at 696. The Supreme Court of Virginia found that there was insufficient evidence to prove that the defendant knew the cocaine was in the bedroom or that it was subject to his dominion and control. *Id.*

In *Drew v. Commonwealth*, 230 Va. 471, 471 (1986), a detective surveilled a house for one hour; in that time, twenty-two people entered the home, remained inside briefly, then left again. Police then executed a search warrant at the home and found cocaine, scales, and other

drug paraphernalia. *Id.* at 472-73. Police also found a checkbook, a bank statement, a phone bill, a driver's license, and other documents, all containing the defendant's name and the address of the house. *Id.* at 472. The Supreme Court of Virginia found that there was no evidence that the defendant was aware of the cocaine. *Id.* at 473. The Court pointed to the fact that the defendant was standing in the street when the police arrived to execute the search warrant and that there was no proof that he had been inside the house when the twenty-two people were there; the Court found that this established only proximity to the drugs. *Id.* The Court also found that the paperwork showing the defendant claimed that house as his address was insufficient to prove that he knew about the cocaine or that it was subject to his dominion and control. *Id.*

Similarly, in *Garland v. Commonwealth*, 225 Va. 182, 183 (1983), police executed a search warrant for a house and found cocaine, marijuana, and other paraphernalia. At the time of the search, a woman and child were inside the residence—the defendant was not. *Id.* In the same room as the drugs and other contraband, police found men's clothing that would fit the defendant, an expired driver's license belonging to the defendant, and a lease for the house naming the woman and the defendant as lessees. *Id.* There was, however, no testimony that the defendant actually lived at that house. *Id.* at 183-84. The Supreme Court of Virginia reversed the defendant's conviction, finding that the evidence proved only that he "had occupied the premises at some time" and that this was insufficient to sustain the conviction. *Id.* at 184.

Finally, in *Lowe v. Commonwealth*, 36 Va. App. 163, 166 (2001), police discovered multiple marijuana plants, appearing to have been freshly tended, outside the defendant's home. This Court found that the evidence did not establish that the defendant "occupied the home at the time the plants were found or that he was the only person with access to the residence" and that although the defendant "resided at the home and had been present there on previous occasions,"

- 9 -

this did not establish constructive possession of the plants.  *Id.* at 167-68.  Notably, this Court stated:

> No evidence showed the [defendant] had been at the house on the day the marijuana was found or during a period from which the finder of fact could reasonably conclude [the defendant] constructively possessed the marijuana.  Furthermore, the Commonwealth's own evidence showed that two other people . . . were at the residence on the day [police] discovered the recently "worked" marijuana plants.  The Commonwealth's circumstantial evidence failed to eliminate the reasonable hypothesis that someone other than [the defendant] brought the pots of marijuana to the home on the day they were discovered.

*Id.* at 168.

These cases demonstrate that Virginia precedent generally does not presume a defendant's knowledge of, or dominion and control over, contraband based solely on proximity or residence.

### B.  Application of the Evidence to the Case Law

While the evidence at trial established that appellant used 3480 Green Ridge Court as his address and that he had lived there at various points in the past, there was no evidence indicating that he was present at the home on the day of the search—or at any time between May 13 through 17, 2018.  Reynolds' testimony, which the trial court found to be believable, was that appellant had stayed with her for approximately five days leading up to and following the search.  While various items tied appellant to 3480 Green Ridge Court, there was no evidence at trial tying appellant to that house *on the day in question*.  Like the defendant in *Cordon*, the evidence at trial did not place him at the house for two days before the search.  Similarly, the paperwork found inside the home was not recent,[3] and while ammunition was located near a book on

---

[3] The DCSE letter was dated February 26, 2018.  Though the photograph of the probation paperwork does not show the date of each page, the top page is dated October 4, 2017.

welding, the evidence at trial established only that appellant had taken welding classes four months prior to the search.

In *Staton v. Commonwealth*, 36 Va. App. 282, 285, *aff'd on reh'g en banc*, 37 Va. App. 238 (2001), police searched an apartment when no one was home and found heroin in a jacket pocket, in a bag inside the refrigerator, and in an open gift bag on the kitchen floor. The police also found paperwork and bills with the defendant's name and the apartment's address, and the defendant was the only person listed on the apartment lease. *Id.* at 286. The defendant presented testimony that he had been staying with his sister and that other family members had been staying in the apartment. *Id.* This Court affirmed the defendant's conviction, noting that there was no physical evidence showing that anyone else had been staying in the apartment and that the trial court was entitled to disbelieve the defendant's evidence on this issue. *Id.* at 287-88. The Court also noted that the heroin in the gift bag was in plain view, which would support a finding that the defendant knew of its presence. *Id.* at 288.

*Staton*, however, is distinguishable from the present case on various levels. Here, the marijuana was found in a closed kitchen cabinet and was not in plain view. Holland was inside the residence when police arrived, and both she and D.J. had access to the home shortly before the search was conducted. Furthermore, the *Staton* Court noted that "a fact finder who disbelieves a defendant is entitled to consider his testimony as perjured and, thus, as additional affirmative evidence of his guilt." *Id.* at 289. Here, appellant did not testify, thus avoiding this evidentiary pitfall.

The Commonwealth suggests that evidence establishing that appellant lived at the house, even if he was not currently staying at it, is sufficient to show his dominion and control over the marijuana and ammunition. However, as in *Lowe*, *Garland*, and *Drew*, other people had access to the residence. Holland was inside the home when Officer Morris arrived on scene; Holland's

mother told Officer Morris that Holland was living at that house. Officer Morris' testimony was that she allowed both D.J. and Holland to enter the home by themselves to bring out the children. Thus, at least two other people had access to the home immediately prior to the search. As in *Lowe*, the Commonwealth's evidence "failed to eliminate the reasonable hypothesis that someone other than" the accused brought the contraband into the home.[4] *Lowe*, 36 Va. App. at 168.

The Commonwealth also argues that it is reasonable to infer that appellant was the man involved in the original domestic dispute that led to the police being dispatched, thus tying him to the house just prior to the search. According to the Commonwealth, because the call was domestic in nature and the evidence at trial established that appellant had been staying with Reynolds because he and Holland had been "arguing," this Court can infer that appellant was the man involved in the domestic call. However, there was absolutely no evidence presented at trial to support this theory. No description or identification was offered of the man who was involved in the dispute. The person who allegedly called in the dispute was not called to testify as a witness, nor was the content of the call offered into evidence.

---

[4] In *Brown v. Commonwealth*, 15 Va. App. 1, 10 (1992) (*en banc*), this Court noted that "[t]he Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the drugs and paraphernalia" in the car the appellant had been driving. However, the factual scenario in *Brown* differs from that presented here. In *Brown*, the appellant exercised dominion and control over the car in which the drugs were found. *Id.* at 9. The appellant admitted to being the driver of the vehicle and, while he claimed to have driven two other people in the car about an hour before the search, he refused to provide their names to the police. *Id.* In upholding the trial court's ruling, the *Brown* Court noted that "there was no evidence presented to suggest" that someone else had placed the drugs in the vehicle. *Id.* at 10. By contrast, here there was no evidence to show Carter had been at the home in the two days leading up to the search, and two other adults (one of whom was also charged with possession with intent to distribute marijuana as a result of this search) were inside the house just prior to the search. While the Commonwealth does not bear the burden of proving that there was "no possibility" that someone else placed the marijuana and ammunition in the house, it does bear the burden of proving that Carter knew these items were in the home and that he exercised dominion and control over them. *See Cordon*, 280 Va. at 694.

The Commonwealth next argues that because men's shoes were found next to the bedside table where the box of ammunition was found, that "it follows that [appellant] had spent the night in the home, and had been in the bedroom where the ammunition was found." This argument also fails for lack of proof. First, the Commonwealth asks this Court to make an inference based on a total absence of evidence. While the evidence established that appellant had lived at that house and had been there at various points prior to the day of the search, there was no evidence that the shoes belonged to appellant or that they had been recently worn. And unlike the men's clothing found in *Garland*, 225 Va. at 183, there was no evidence presented that the shoes were the same size as that worn by appellant.

Finally, the Commonwealth argues that although Reynolds testified that Carter stayed at her house from May 13 through May 17, 2018, and that he was there "the majority of the time," this does not foreclose the possibility that he left briefly to confront Holland at the 3480 Green Ridge Court residence, thus placing him at the home on the morning of the search. Even if we were to accept this possibility, it does not relieve the prosecution of its burden to provide some evidence supporting its factual contention. Here, the prosecution introduced no evidence of Carter's presence at the house during the entire week in question. "[A]n inference cannot be based upon an inference; a verdict resting upon such foundation is merely the fruit of conjecture, and cannot be sustained." *See Stover v. Norfolk & Western Ry. Co.*, 249 Va. 192, 200 (1995).

Virginia precedent sets forth a long line of cases that require the Commonwealth to prove a defendant's constructive possession of illegal materials—including his knowledge of their presence and character and his dominion and control over them—beyond a reasonable doubt. *See Cordon*, 280 Va. at 694; *Drew*, 230 Va. at 473; *Lowe*, 36 Va. App. at 168. At trial, the prosecution simply failed to meet this burden. The Commonwealth offered no material acts, statements, or conduct by appellant to buttress its case. It failed to provide any evidence placing

- 13 -

Carter at the house within days of the search. This Court finds that there was insufficient evidence to show that appellant constructively possessed either the ammunition or the marijuana, and reverses his convictions on these charges.[5]

## IV. Probation Revocation

Appellant's third and final assignment of error alleges that "[t]he erroneous conviction impacted the probation revocation, and that matter should be remanded for resentencing." Appellate review of the revocation of a suspended sentence is subject to an abuse of discretion standard of review. *Leitao v. Commonwealth*, 39 Va. App. 435, 438 (2002); *see also Slayton v. Commonwealth*, 185 Va. 357, 367 (1946).

At appellant's sentencing hearing, the Commonwealth argued that "we are here on dispositions on two offenses that are essentially the same . . . only the second offense now involves ammunition. . . . To come back before the Court, commit the same offense, I think it could be argued you deserve all your time." Thus, although the new convictions did not form the basis of the probation revocation, the Commonwealth argued that they should be considered in sentencing appellant on the revocation. Appellant seeks a resentencing. We believe he is entitled to one. The record does not disclose whether or to what extent the trial court relied upon appellant's now-reversed convictions when it revoked his previously suspended sentence. We therefore remand this matter for resentencing. *See Resio v. Commonwealth*, 29 Va. App. 616, 619-24 (1999) (affirming a probation revocation order but remanding for resentencing after the reversal of two of the three convictions upon which the revocation was based).

---

[5] Because this Court reverses appellant's convictions, we need not reach appellant's second assignment of error challenging the trial court's ruling on his motion to suppress.

## V.  Conclusion

We find that there is insufficient evidence to support Carter's convictions for possession with intent to distribute marijuana and possession of ammunition by a felon, and we reverse and dismiss these charges.  We further find that Carter's now-reversed convictions may have affected the sentence imposed on his probation revocation.  We therefore remand the probation revocation for reconsideration of his sentence.

*Reversed and dismissed in part, remanded in part.*