COURT OF APPEALS OF VIRGINIA

Present:    Judges AtLee, Causey and Callins
Argued at Norfolk, Virginia

JEROME LEE WILKERSON

                                                    MEMORANDUM OPINION[*] BY
v.          Record No. 1385-22-1              JUDGE DOMINIQUE A. CALLINS
                                                       OCTOBER 17, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

Emily M. Munn (Emily M. Munn PC, on brief), for appellant.

David A. Mick, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Jerome Lee Wilkerson appeals his conviction of possession of a Schedule I or II controlled

substance in violation of Code § 18.2-250. He challenges the sufficiency of the evidence to

support his constructive possession of cocaine found in the property bag of a cell block bunk

accessible to the general jail population. For the following reasons, we reverse the conviction.

BACKGROUND[1]

Block 2k, a cell block of the Norfolk City Jail, consisted of ten to twelve secure "huts,"

each hut containing four "triple" bunk beds. Absent a lockdown, the doors to each hut

"primarily" remained open and accessible to all inmates housed in the cell block. At full

capacity, Block 2k held 144 inmates.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] "We review the evidence 'in the "light most favorable" to the Commonwealth, the
prevailing party in the trial court.'" *Lewis v. Commonwealth*, 76 Va. App. 92, 97 n.1 (2022)
(quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)).

On February 20, 2020, Sergeant Steve Hoggard received a tip that there was cocaine in Block 2k. The sergeant's team cleared the entire cell block by moving the 30-40 resident inmates to "a little area to keep them safe and secure." Then, using a "narcotics detection K-9" dog, Sergeant Hoggard and his team searched the cell block. The dog alerted on the "property bag" located on Wilkerson's bunk. A search of the bag revealed a medical form bearing Wilkerson's name and two toilet paper rolls, one of which concealed a plastic bag containing 1.03 grams of cocaine.

When Sergeant Hoggard questioned him, Wilkerson admitted ownership of the property bag. However, Wilkerson denied any knowledge of the cocaine. Sergeant Hoggard then asked whether other inmates "[went] into his bag." Wilkerson replied, "F[***] no. Ain't no one goes into . . . my bag. I watch my bag. They know better. I check my bag every 15 minutes."[2]

At trial, Sergeant Hoggard testified that Wilkerson had been observed sleeping and "relaxing" on his bunk at some time "before," but did not specify who made the observation or when, nor did the sergeant testify to the proximity in time of the observation to the search. And although he testified that he had reviewed surveillance footage of Block 2k, Sergeant Hoggard did not testify as to whether Wilkerson had been in his hut immediately before the search. Nor did Sergeant Hoggard testify as to whether Wilkerson had left his hut, and if so, how much time had passed between Wilkerson's departure from his hut and the search.[3] Sergeant Hoggard did testify that jail policy required Wilkerson to leave his property bag in the cell block upon his departure. He also acknowledged that certain activities required an inmate's absence from the

---

[2] Sergeant Hoggard did not ask any follow-up questions of Wilkerson regarding the manner in which Wilkerson checks his bag.

[3] Sergeant Hoggard stated that the jail kept logs of when inmates entered and left their cells, but he did not bring them to court. He also testified that he reviewed videos of Wilkerson's cell block to ascertain whether anyone "went near that area," but following an evidentiary objection, he did not testify further in that regard.

cell block for more than 15 minutes, such as medical appointments, attorney meetings, and court dates. Sergeant Hoggard agreed that, under those circumstances, Wilkerson could not monitor his property bag every 15 minutes.

At the conclusion of the Commonwealth's case-in-chief, Wilkerson moved to strike the evidence. He argued that the evidence was insufficient to prove that he had knowledge and control of the cocaine in his bag because other inmates had access to his bag, and under certain circumstances, such access exceeded 15 minutes. The trial court rejected Wilkerson's argument that other inmates had access to his property bag, noting that, "but for the statement to Sergeant Hoggard, you might have something." The court found that Wilkerson constructively possessed the cocaine in his property bag and convicted him. Wilkerson appeals.

ANALYSIS

A. *Standard of Review*

"[T]he Commonwealth bears the burden to prove each element of the crime beyond a reasonable doubt." *Goldman v. Commonwealth*, 74 Va. App. 556, 562 (2022). In sufficiency challenges involving drug possession, this Court has framed its role as follows:

> When considering the sufficiency of the evidence presented below, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" We must instead ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020) (citations omitted). We defer "to the trial court's findings of fact unless they are plainly wrong or without evidence to support them." *Goldman*, 74 Va. App. at 562.

*B. The evidence is insufficient to prove Wilkerson's possession beyond a reasonable doubt.*

Wilkerson was convicted under Code § 18.2-250, which proscribes the "knowing[] or intentional[] . . . possess[ion] [of] a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a [qualifying] practitioner[.]"  To prove possession of a controlled substance in violation of the Code, "the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and that the accused *consciously* possessed it."  *Yerling*, 71 Va. App. at 532 (emphasis added) (citing *Jones v. Commonwealth*, 17 Va. App. 572, 574 (1994)).

Possession may be actual or constructive.  *Id.*  "Constructive possession may be established by 'evidence of acts, statements, or conduct by the defendant or other facts and circumstances[.]'"  *Lewis v. Commonwealth*, 76 Va. App. 92, 102 (2022) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009)).  Such evidence must "prov[e] that the defendant was aware of the presence and character of the [contraband] and that the [contraband] was subject to his dominion and control."  *Id.* (second and third alterations in original) (quoting *Smallwood*, 278 Va. at 630); *see also Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992) (specifying that a defendant must "have known of the presence, nature, and character of the contraband at the time of . . . ownership").  Because Wilkerson's possession was constructive, "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence."  *Pemberton v. Commonwealth*, 17 Va. App. 651, 655 (1994) (quoting *Garland v. Commonwealth*, 225 Va. 182, 184 (1983)).

Wilkerson argues that "the Commonwealth failed to show [his] exclusive possession of the bag on the date of the search" as no evidence placed him with or near the bag, or otherwise demonstrated his "recent possession" of the bag "at any time prior to the K-9 search."  We agree

that the evidence falls short of proving Wilkerson's knowing possession of the cocaine found in his property bag.

The Commonwealth points to Wilkerson's undisputed claim of ownership of the property bag as probative evidence of constructive possession—that is, of Wilkerson's awareness of the nature and character of the cocaine, and dominion and control of the same. But we have long held that mere ownership or occupancy of the property in which a controlled substance is found is insufficient to prove knowing possession of the substance. *See Young v. Commonwealth*, 275 Va. 587, 592 (2008) (holding that "bare" possession is not enough); *Lewis*, 76 Va. App. at 102 ("[O]wnership . . . alone is insufficient to prove knowing possession of [contraband][.]" (second alteration in original) (quoting *Burchette*, 15 Va. App. at 435)). Nor does proximity alone satisfy proof of constructive possession. *See Yerling*, 71 Va. App. at 532.

The Commonwealth also singles out Wilkerson's statement that "F[***] no. Ain't no one goes into . . . my bag. I watch my bag. They know better. I check my bag every 15 minutes," as particularly weighty on the proof elements. In fact, the trial court appears to have relied primarily on the statement in finding Wilkerson guilty, declaring that Wilkerson's statement "makes the case." However, we find the trial court's reliance on this statement to prove constructive possession problematic.

Wilkerson's statements, "Ain't no one goes into . . . my bag," "I watch my bag," and "I check my bag every 15 minutes," fall short of a confession.[4] That is, Wilkerson's attenuated statements that "I watch my bag" and "I check my bag every 15 minutes," coupled with the more

---

[4] Wilkerson's statements were admissions to the extent that they constituted an "acknowledgment of a fact or facts tending to prove guilt but falling short of an admission to all essential elements of the crime." *Caminade v. Commonwealth*, 230 Va. 505, 510 (1986) (quoting E. Cleary, *McCormick's Handbook of the Law of Evidence* § 144, at 362 (3d ed. 1984)).

speculative "Ain't no one goes into . . . my bag," without more, were insufficient to *prove* Wilkerson's knowing possession of the substance.

The Commonwealth's own witness established that Wilkerson could neither watch nor check his bag every 15 minutes. Sergeant Hoggard confirmed that when attending medical appointments, attorney meetings, or court dates, Wilkerson would have left the cell block, and his bag, for a period of more than 15 minutes. The Commonwealth introduced no evidence to establish that Wilkerson was in the cell block, and not attending a medical appointment, attorney meeting, or court date prior to the search.

Further, the admission that Wilkerson checked his bag every 15 minutes showed the evident concern, borne out by Sergeant Hoggard's testimony, for the ease with which fellow inmates could readily access it. And although the Commonwealth need not prove the impossibility "that someone else may have planted, discarded, abandoned or placed the drugs," *Brown v. Commonwealth*, 15 Va. App. 1, 10 (1992) (en banc), it must prove beyond a reasonable doubt that Wilkerson *did* knowingly possess the contraband.

Proving constructive possession by an inmate imposes a unique challenge. The Commonwealth bears the burden of linking an accused to a controlled substance in, effectively, a public place. Indeed, Sergeant Hoggard testified that Wilkerson's hut, which he shared with three other inmates, was primarily open and accessible. Moreover, the hut was nestled within a cell block which, at the time, housed approximately 30 to 40 inmates, all of whom could pass freely through the cell block, and the huts within it.

Here, the Commonwealth failed to furnish a link connecting Wilkerson to the controlled substance. Notwithstanding Wilkerson's admission that he checked his bag every 15 minutes, there is no evidence that he did so, or that Wilkerson was with his bag immediately preceding the lockdown. Nor did the Commonwealth establish that Wilkerson was in his cell block

immediately prior to the search. Instead, Sergeant Hoggard testified that Wilkerson "had been observed sleeping and relaxing before," but did not state the context for this observation or otherwise indicate how long "before" the search Wilkerson had been so observed.

Accordingly, the trial court's reliance on Wilkerson's statement to support the conviction was misplaced, as the statement, without more, was insufficient to prove Wilkerson's knowing possession of the controlled substance. *See Yerling*, 71 Va. App. at 532.

Yet, even assuming, arguendo, that the Commonwealth established Wilkerson's dominion and control over the property bag in which the cocaine was found, it still failed to show Wilkerson's conscious knowledge of the presence, nature, and character of the drugs. *See Burchette*, 15 Va. App. at 435. Sergeant Hoggard testified to Wilkerson's presence in his hut "before," with no indication of when "before" was. Notably, although it was available, the Commonwealth did not introduce surveillance video evidence of Wilkerson on his bunk or in his hut prior to the search. Consequently, Sergeant Hoggard's testimony that Wilkerson was in his hut "before" supplies no useable inferences to support the finding that Wilkerson had conscious knowledge of the presence, nature, and character of the drugs. *Cf. Burchette*, 15 Va. App. at 435 ("[P]roof that a person is in close proximity to contraband is a relevant fact that, depending on the circumstances, may tend to show that, as an owner or occupant of property . . . , the person necessarily knows of the presence, nature and character of a substance . . . found there."). Wilkerson also denied knowledge of the cocaine. Yet, even if Wilkerson used his denial as a smokescreen to conceal guilt, his denial would not be sufficient to show that he had conscious knowledge of the presence, nature, and character of the drugs, as there exists no other competent evidence tending to show that Wilkerson consciously knew of the presence, nature, and character of the drugs. *See Cordon v. Commonwealth*, 280 Va. 691, 696 (2010) (holding that appellant's

denial, "assuming . . . [it] gave rise to an inference that he was lying to conceal guilt," could not, when combined with the other evidence in the record, make up for that evidence's paucity).

Further, Wilkerson's admission of occupancy and ownership could not, by itself, admit knowledge of the presence, nature, and the character of the drugs. *Cordon*, 280 Va. at 696, and *Young*, 275 Va. at 591-93, are instructive. In *Cordon*, our Supreme Court reversed the appellant's conviction for possession of cocaine, even though the cocaine was found in a cooler in a bedroom that the appellant occasionally occupied and characterized as "his." 280 Va. at 696. Within the bedroom was also found paperwork in the appellant's name, and a business card provided to the appellant two days before the search. *Id.* at 693, 696. The Supreme Court held that this evidence was sufficient only to support a "suspicion of guilt," and fell short of proving that the appellant constructively possessed the cocaine. *Id.* at 696. In *Young*, a pill bottle carrying a label bearing someone else's name was found in that appellant's purse following a traffic stop. The label on the bottle identified its contents as "OxyContin," but the pills within were different sizes and colors. 275 Va. at 589. The Supreme Court reversed. Holding that "possession alone, without more, is insufficient to support an inference of guilty knowledge," it found that the appellant's mere possession of the contraband was not enough to prove possession of a controlled substance under Code § 18.2-250. *Id.* at 592.

Here, Wilkerson's admission of occupancy and ownership of a jail bunk and property bag accessible to the general jail population, without more, was insufficient to show conscious knowledge of the presence, nature, and character of the cocaine.

Thus, the evidence was insufficient to prove Wilkerson's guilt beyond a reasonable doubt.

CONCLUSION

For the foregoing reasons, the conviction is reversed, and the indictment is dismissed.

*Reversed and final judgment.*