COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Huff and Senior Judge Frank
Argued by teleconference

UNPUBLISHED

DEONDREA JERRELE McLAURIN

v.      Record No. 1728-19-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROBERT P. FRANK
NOVEMBER 4, 2020

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Tracy C. Hudson, Judge

Jeremiah M. Adair (The Ford Law Firm, on brief), for appellant.

Maureen E. Mshar, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Deondrea Jerrele McLaurin, appellant, was convicted following a bench trial of

possession with the intent to distribute marijuana in violation of Code § 18.2-248.1(a)(2) and

possession of a Schedule IV controlled substance, in violation of Code § 18.2-250(A)(b1).  On

appeal, he contends that the evidence was insufficient to support his convictions.  We agree.

BACKGROUND

The facts of this case are not in controversy.  On July 10, 2017, Prince William County

police executed a search warrant at an apartment on Lakota Drive in Prince William County.

The search revealed "various" bags of marijuana, Xanax pills (a Schedule IV drug), and

"packaging" consistent with drug distribution in the apartment's "back left bedroom."

Marijuana, packaged in multiple heat-sealed bags and weighing approximately fourteen ounces,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

was inside a black backpack in that bedroom.[1]  In that same room, police found a Virginia "Under 21" identification card.  The identification card bore appellant's photograph, his name and address, and his date of birth.  The card had expired on December 3, 2014, and listed appellant's address as "Cork Glen Way" in Springfield, Virginia.

An officer also discovered in the bedroom a digital scale, two loaded handgun magazines, and a "Virginia uniform summons" in appellant's name.  Those items were inside what the officer described as a "black and clear . . . container shelf" or "bin."  The "bin" was located on the TV stand.  The summons, like the identification card, listed "Cork Glen Way" in Springfield as appellant's address, rather than the address of the apartment subject to the search.  The summons, signed by appellant, charged him with possession of marijuana, second or subsequent offense.  It cited an offense date of June 8, 2017, approximately a month prior to the search.  It listed July 26, 2017, as appellant's court date, a mere sixteen days after the execution of the search warrant.

In the same bedroom, the police also found an undated Virginia Department of Medical Assistance Services ("DMAS") card[2] bearing appellant's name and date of birth.  Although the police recovered a "great deal of items" from the residence, no records or documents collected from the back left bedroom displayed the name of anyone other than appellant.  Appellant was not present during the execution of the search warrant.  Based on the items recovered at the residence, multiple people were arrested, including appellant.  A subsequent fingerprint analysis of the bags of marijuana yielded no fingerprints "of value."

---

[1] The record does not disclose specifically where in the bedroom the backpack was found.

[2] Again, the record is silent as to the specific location of the DMAS card.  However, a photograph depicts it being held against the front of what appears to be a black wallet.

At the conclusion of the Commonwealth's case in chief, appellant moved to strike the evidence. He argued that the evidence did not establish that he was aware of the drugs, or that he had ever been to the Lakota Drive residence. Appellant stressed the absence of acts, statements, or anything else attributable to him that proved his constructive possession and knowledge of the drugs found in the residence.[3] In his closing argument, appellant reiterated the same points raised in his motion to strike. The court rejected appellant's argument, finding him guilty of both counts. This appeal followed.

ANALYSIS

On appeal, appellant contends that the circumstantial evidence, including the presence of his personal documents, was insufficient to prove that he possessed the marijuana and Xanax.

When the sufficiency of evidence is challenged on appeal, the Court views the evidence in the light most favorable to the Commonwealth, the prevailing party at trial, including drawing all reasonable inferences in the Commonwealth's favor from the facts proved. See Clark v. Commonwealth, 279 Va. 636, 640-41 (2010). The Court must affirm the judgment of the trial court unless that judgment is "plainly wrong or without evidence to support it." Code § 8.01-680.

"If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Clark, 279 Va. at 641). As such, in reviewing such a challenge, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable

---

[3] Appellant's argument was limited to whether the evidence proved that he possessed the drugs. He did not assert that the evidence failed to prove his intent to distribute the marijuana, and that issue is not before us on appeal. Accordingly, we omit from our factual recitation the expert testimony addressing whether the circumstances surrounding the possession of the marijuana were inconsistent with personal use.

doubt.' Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "However, 'it is just as obligatory upon the appellate court, to set aside . . . the judgment of a court, when it is, in its opinion, contrary to the law and evidence, and therefore plainly wrong, as it is to sustain it when the reverse is true.'" Caldwell v. Commonwealth, ___ Va. ___ (Apr. 9, 2020) (alteration in original).

To establish the constructive possession of drugs, the Commonwealth must "show[] that the presence and character of the substance[s] w[ere] known to the defendant and that the substance[s] w[ere] subject to his dominion and control." Cordon v. Commonwealth, 280 Va. 691, 694 (2010). "Knowledge of the presence and character of the [drugs] may be shown by evidence of the acts, statements or conduct of the accused." Eckhart v. Commonwealth, 222 Va. 447, 450 (1981). The defendant's "acts, statements, or conduct," as well as "other facts or circumstances," may also constitute proof that the drugs were subject to his dominion and control. Powers v. Commonwealth, 227 Va. 474, 476 (1984). "Possession and not ownership is the vital issue. Possession may be joint or several. Two or more persons may be in possession where each has the power of control and intends to exercise control jointly." Atkins v. Commonwealth, 57 Va. App. 2, 23 (2010) (quoting Burnette v. Commonwealth, 194 Va. 785, 792 (1953)); see also Hamilton v. Commonwealth, 16 Va. App. 751, 755-56 (1993) (noting that possession of contraband may be joint). Possession "need not be exclusive." Eckhart, 222 Va. at 450.

In determining whether a defendant is guilty of possession of an illicit drug or substance, the trier of fact must view the evidence based on the totality of the circumstances. See Haskins, 44 Va. App. at 6. "Circumstantial evidence is not viewed in isolation." Commonwealth v.

Hudson, 265 Va. 505, 514 (2003). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion [of guilt].'" Rams v. Commonwealth, 70 Va. App. 12, 36-37 (2019) (quoting Stamper v. Commonwealth, 220 Va. 260, 273 (1979)). "The statement that circumstantial evidence must exclude every reasonable hypothesis of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Hudson, 265 Va. at 513.

Appellant asserts that there are too many gaps in the evidence to establish his guilt beyond a reasonable doubt. He contends that the Commonwealth's evidence established neither his knowledge of the presence of the drugs nor that they were subject to his dominion and control. He emphasizes that no fingerprint evidence linked him to the apartment or the contraband; no testimony established that he had ever been to the apartment; no testimony linked him to the marijuana or Xanax, or any of the items in the room, other than his identifying documents; and no statements by him linked him to the apartment or any of the items found there. Further, appellant argues that, since he was not present when the search warrant was executed, and there was no testimony establishing his presence at the apartment at *any* time, the evidence was insufficient to prove his constructive possession of the drugs.[4]

In pressing his claim that the circumstantial evidence failed to prove that he constructively possessed the marijuana and Xanax, appellant relies on Garland v. Commonwealth, 225 Va. 182 (1983). In that case, the police executed a search warrant at a Charlottesville residence and discovered marijuana, hashish, scales, drug paraphernalia, and

---

[4] As he did at trial, appellant also offers various hypotheses of innocence to explain the presence of his wallet in the bedroom. However, the record is silent regarding the location of the wallet and, even assuming that it was in the bedroom, it has no bearing on our analysis because its presence there does not establish that appellant was in the bedroom contemporaneously with the drugs.

cocaine in one of the bedrooms. Id. at 183. In addition to the drugs and paraphernalia, the police found clothing and shoes in Garland's size, an expired Virginia operator's license in his name, and a current lease agreement for the residence listing Garland as a co-tenant. Id. Although the house had been under surveillance "for some time prior to the search," the police never observed Garland "at or near it," and no one testified that he lived there. Id. at 183-84. Garland was not present at the time of the search, and he made no statements to police. Id. The Supreme Court determined that the evidence was insufficient to sustain a conviction for possession of cocaine. The Supreme Court concluded:

> The only evidence linking Garland to the residence was the lease, the operator's license, and the clothing. The most that could be reasonably inferred from the lease was that Garland had occupied the premises at some time. This, by itself, cannot sustain the conviction. The license, which had expired, does nothing to prove current occupancy. The clothing, which the officer testified would have fit Garland, also would have fit numerous others. No evidence was introduced to prove the clothing belonged to the defendant.

Id. at 184.

Absent a temporal connection, mere occupancy of the location where drugs are found is insufficient to prove constructive possession, even when the evidence suggests that the defendant is lying to the police about his occupancy. For example, in Cordon v. Commonwealth, 280 Va. 691 (2010), the police found a cooler containing cocaine, numerous baggies, and drug paraphernalia in a bedroom. Id. at 693. They also found a box of bullets and other indicia of drug distribution. Id. Although Cordon was not present when the search occurred, checks and papers bearing his name were in the bedroom with the contraband. Id. Only two days earlier, Cordon had spoken to the police while they investigated an unrelated burglary there. Id. At that time, he stated that the house belonged to his uncle and noted that he, appellant, was living there while his uncle was away. Id. Although Cordon provided a different address to the police as his

residence, he identified a bedroom in his uncle's house as "his," the same bedroom where the drugs were found later in the cooler. Id. The officer investigating the burglary gave Cordon his business card, and the card was still in the bedroom when the police found the drugs. Id. Following his arrest for possession of cocaine, the police interviewed Cordon. Id. at 694. When an officer informed Cordon that cocaine had been found in "his" bedroom, Cordon denied living at the house and terminated the interview. Id.

Despite Cordon's conflicting statements, the Supreme Court determined that the evidence was insufficient to prove he constructively possessed the cocaine because he was not present during the search, and "[t]here was no other physical evidence linking Cordon to the cooler or the contraband." Id. at 696. The Supreme Court further found there was "no evidence of ownership of the cooler, a very portable item, and no evidence placed Cordon at the house at any time between the day he received [the officer]'s business card and the day the search warrant was executed." Id.

Likewise, in Drew v. Commonwealth, 230 Va. 471 (1986), the Supreme Court held that the evidence failed to prove that Drew constructively possessed the drugs because the evidence did not establish that he occupied the premises while the drugs were on site. In Drew, the police were conducting surveillance on a residence at "3317 Knox Street" when they observed twenty-two people enter and exit the premises within an hour. Id. at 472. When the officers returned with a search warrant two hours later, Drew was standing in the street talking to someone in a car parked two doors away from the residence. Id. Drew's van and a car registered to Cheryl McClarty were parked near the residence. Id. McClarty was in the master bedroom when the police searched the premises and found cocaine paraphernalia in the master bedroom, as well as cocaine throughout the house. Id. at 472-73. Clothing belonging to a man and a woman was hanging in the master bedroom closet. Id. at 472. In the living room the

officers discovered a checkbook, a bank statement, a telephone bill, and a wallet containing

vehicle registration cards, a driver's license, and a credit union voucher. Id. All of these

documents bore Drew's name and the Knox Street address. Id.

Noting that the facts were "strikingly similar" to those in Garland, the Supreme Court

reversed Drew's conviction. Id. at 473-74. It noted that

> [t]he record contains no evidence of statements or conduct which
> tends to show that Drew was aware of the presence of cocaine in
> the dwelling. The only evidence that the substance was subject to
> his dominion and control was the several documents introduced to
> show that he claimed the Knox Street address as his residence. But
> such evidence, though relevant, raises no presumption that he
> "knowingly or intentionally possessed [a] controlled substance"
> found there. Code § 18.2-250. The police observed Drew standing
> in the street near the dwelling when they returned to conduct the
> search, but there is no proof he was inside the house when the
> twenty-two visitors entered.

Id. at 473.

Here, as in Garland, Drew, and Cordon, there is no evidence that appellant was in the

residence when the police found the marijuana and Xanax. Further, as in Cordon, no physical

evidence linked appellant to the drugs. The Commonwealth contends that the presence of

documents essential to appellant in the bedroom distinguishes the instant case from Garland.

Specifically, it argues that appellant would not have casually discarded the summons and the

DMAS card, documents critical to his liberty and medical care. Assuming that the

Commonwealth is correct, however, the evidence does not reveal when the documents were left

in the bedroom, whether appellant was the individual who left them there, or, even assuming that

he was, whether the drugs were present when he did so.

The record is devoid of any direct evidence that appellant was ever in the apartment. No

testimony establishes that he had been there, and appellant made no statements suggesting that

he had visited the residence and was aware of the drugs. The facts presented here are much

sparser than those present in <u>Garland</u>, <u>Drew</u>, and <u>Cordon</u>—*i.e.*, there was no evidence that appellant had a possessory interest in the apartment, kept his clothes there, or had ever identified the bedroom was "his." The only evidence linking him to the residence was an active summons showing that appellant lived at a Springfield address, an expired identification card bearing the same Springfield address, and an undated DMAS card. Although the presence of these documents may permit a rational inference that appellant had been at the residence at some point in time, they do not prove that he was there simultaneously with the drugs. In short, no evidence establishes that appellant was in the bedroom when the drugs were present, that he was aware of their presence, or that they were subject to his dominion and control. See <u>Cordon</u>, 280 Va. at 694; <u>Powers</u>, 227 Va. at 476.

For the reasons stated, we find the evidence insufficient to prove that appellant possessed the marijuana and Xanax. Therefore, we reverse the judgment of the trial court and dismiss the indictments.

<u>Reversed and dismissed.</u>