COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Chaney and Lorish
Argued at Richmond, Virginia


JAMES MILTON TYLER, JR.

                                      MEMORANDUM OPINION[*] BY
v.      Record No. 0219-22-2              JUDGE LISA M. LORISH
                                         FEBRUARY 21, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Robert M. Lorey (Law Office of Robert M. Lorey, LLC, on briefs),
for appellant.

Lucille M. Wall, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


James Milton Tyler argues that the trial court erred by allowing the Commonwealth's expert

to testify about matters not disclosed in advance under Rule 3A:11(b)(4)(A). Because the testimony

was admissible under Rule 3A:11(b)(4)(B) and Tyler failed to show how he was prejudiced by the

lack of advanced disclosure, we affirm the trial court's decision to admit the testimony. We also

conclude that this expert testimony, combined with the other evidence in the case, was sufficient to

prove Tyler possessed the narcotics found in his vehicle.

BACKGROUND

We recite all facts "in the 'light most favorable' to the Commonwealth, the prevailing party

in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). As a result, we "discard the evidence of the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

Officer P. Howard checked the license plate of a silver Jaguar traveling in the lane ahead of his marked patrol car, discovering the plate had expired and that the registered owner was "not licensed." Before Officer Howard could signal the Jaguar to stop, it "darted in front of another vehicle, causing that vehicle . . . to slam on [the] brakes to avoid a collision."

Officer Howard stopped the Jaguar. Wearing a body camera, he approached the driver's door, and Tyler rolled down the window. A woman, later identified as Courtney Smith, was in the front passenger seat and an unidentified man was in the back seat. When Officer Howard asked Tyler for his license and registration, Tyler replied that he did not have his license because "they messed up on it." He then reached over and opened the glovebox to retrieve his vehicle's registration. Body camera footage from Officer Shupp, assisting Officer Howard, shows a green "Newport" cigarette package in the corner of the glovebox closest to Tyler when he opened the glovebox. While Tyler fumbled with the documents over the steering wheel, Smith quickly closed the glovebox.

While the officers determined that Tyler was a habitual offender, but that Smith could drive, Smith folded her sweater in her lap and opened the glovebox again. Smith's hands were visible in the body camera footage and she did not move toward the glovebox after opening it. Officer Howard instructed Tyler to remain in the vehicle, closed the driver's door, and returned to his patrol car with Tyler's registration.

After checking Tyler's registration, Officer Howard returned to the car, removed Tyler, and arrested him for felony driving after being declared a habitual offender. When Tyler opened the driver's door, the glovebox was closed again. Officer Howard asked Tyler about a plastic

baggy he saw in the door compartment that he testified was "consistent [in appearance] with drug use." Although Tyler was handcuffed, he picked up the baggy saying nothing was in it while "crinkling and dumping" a brown powder onto the pavement.

Suspecting the brown powder was narcotics, Officer Howard asked both passengers to leave the car. After spying a revolver in the unidentified male's waistband, he was searched, and the officers found a dollar bill containing brown powder residue. Officer Howard then searched the car.

The officers found a gun in a purse on the front passenger floorboard, and over 60 unused lottery "play slips" in the front passenger door. Inside the Newport cigarette package from the glovebox was a dark, opaque bag with a brown, powdery substance inside. In the center console, Officer Howard found a "folded up lottery ticket with brown powder residue" and a "small plastic baggy with brown powder in it." Subsequent forensic tests determined that the Newport package contained 17.3442 grams of heroin and the folded dollar bill held heroin residue.

Smith told Officer Shupp that Tyler had given her the gun and had instructed her to put it in her purse. She also admitted that there was heroin in a needle in her purse but she denied handling the cigarette package, stating that she was "lighting a cigarette."

At a bench trial, Detective Necolettos, an expert in drug distribution, opined that the amount of heroin in the Newport package was inconsistent with personal use. He based this opinion on the quantity of heroin, the 60 unused lottery play slips, and the torn lottery play slip in the passenger door. Detective Necolettos explained that torn lottery play slips were commonly used to distribute heroin and also observed that there was a "high correlation" between firearms and drug trafficking. Tyler objected to Detective Necolettos's testimony about the lottery ticket slips, arguing that it exceeded the scope of the Commonwealth's pre-trial expert designation which stated simply: "The Commonwealth expects Detective Necolettos to testify that the

- 3 -

amount of drugs seized is inconsistent with personal use."  The trial court overruled Tyler's objection.  On cross-examination, Detective Necolettos admitted he had not reviewed the body camera footage or police report before the Commonwealth filed its expert designation, but had only known about the quantity of drugs before trial and otherwise was basing his opinion on the evidence introduced at trial.

At the close of evidence, the court convicted Tyler of possessing a Schedule I or II controlled substance with the intent to distribute, second offense.  Before sentencing, Tyler moved to set aside the verdict, asserting that the evidence did not exclude a reasonable hypothesis that the front seat passenger (Smith) possessed the heroin and not him.  Tyler argued that his due process rights were violated because he had been convicted without proof of his guilt beyond a reasonable doubt.  He also argued the court erred by relying on Detective Necolettos's testimony about the lottery play slips and firearms in the vehicle being consistent with drug distribution because that testimony was not disclosed to Tyler before trial. The trial court denied his motion and sentenced him to 40 years' incarceration, with 25 years suspended.

ANALYSIS

*A.  Scope of Expert Testimony*

An appellate court reviews a trial court's decision about the admissibility of evidence for abuse of discretion.  *Lucas v. Riverhill Poultry, Inc.*, 300 Va. 78, 92 (2021).  Although the trial court has discretion, it is not "free to simply act in any way it may deem desirable under the circumstances."  *Id.*  Rather, "the circuit court 'has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* at 93 (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)).  It is well-settled that "trial courts have the authority to interpret their own orders." *Fredericksburg Constr. Co., Inc. v. J.W. Wyne Excavating, Inc.*, 260 Va. 137, 144 (2000); *see*

*also Rusty's Welding Serv., Inc. v. Gibson,* 29 Va. App. 119, 129 (1999) (en banc).  If a trial court's evidentiary ruling is based on an interpretation of the Rules of the Supreme Court, we review that interpretation de novo.  *Cousett v. Commonwealth*, 71 Va. App. 49, 57 (2019).

Tyler argues that the trial court erred by allowing Detective Necolettos to testify that the presence of unused lottery tickets and firearms in the vehicle were factors on which he relied in forming his opinion that the quantity of heroin was inconsistent with personal use.  Tyler claims this is inconsistent with the Commonwealth's pretrial expert witness designation which stated only that: "The Commonwealth expects Detective Necolettos to testify that the amount of drugs seized is inconsistent with personal use."  Because Detective Necolettos admitted on cross-examination that he had not reviewed the body camera footage or considered the presence of the unused lottery tickets or firearms prior to when the Commonwealth made its written designation, Tyler argues that this testimony violated the court's discovery order.

Here, the discovery order incorporated Rule 3A:11(b)(4)(A), and required the Commonwealth to:

> Notify the accused in writing of the Commonwealth's intent to introduce expert opinion testimony at trial or sentencing and to provide the accused with: (i) any written report of the expert witness setting forth the witness's opinions and bases and reasons for those opinions, or, if there is no such report, a written summary of the expected expert testimony setting forth the witness's opinions and the bases and reasons for those opinions, and (ii) the witness's qualifications and contact information.

The order also incorporated Rule 3A:11(b)(4)(B):

> Nothing in subparts (b)(4)(A)(i) or (ii) of this Rule renders inadmissible an expert witness's testimony at the trial or sentencing further explaining the opinions, bases and reasons disclosed pursuant to this Rule, or the expert witness's qualifications, just because the further explanatory language was not included in the notice and disclosure provided under this Rule.

Under Rule 3A:11(b)(4)(A) and the court's discovery order, the Commonwealth needed to disclose not only the expected expert testimony (that "the amount of drugs is inconsistent with personal use") but also the "bases and reasons" for this opinion. Here, the Commonwealth argues that Detective Necolettos's testimony that torn lottery play slips were commonly used to distribute heroin, as well as the observation that there was a "high correlation" between firearms and drug trafficking, were additional bases and reasons "further explaining" the "opinions, bases and reasons disclosed pursuant to this Rule." But for *additional* bases and reasons to qualify under Rule 3A:11(b)(4)(B), a party must first have disclosed at least *some* basis or reason under Rule 3A:11(b)(4)(A).

In the alternative, the Commonwealth argues that Tyler was not prejudiced by the failure to disclose under Rule 3A:11(b)(4)(A). We agree. A trial court does not err in admitting evidence "when a discovery violation does not prejudice the substantial rights of a defendant." *Davis v. Commonwealth*, 230 Va. 201, 204 (1985). While Tyler generally argues on appeal that he was prejudiced because the court relied on Detective Necolettos's testimony to find him guilty of the offense, Tyler fails to point to any prejudice he experienced from the failure to include this information in the pretrial expert disclosure (nor did he identify any prejudice for the trial court). For example, if he was "surprised by the content or otherwise unprepared to deal with it, he could have requested a continuance." *Naulty v. Commonwealth*, 2 Va. App. 523, 528 (1986). Without a showing of prejudice tied to the alleged discovery violation, we affirm the trial court's decision to admit the testimony. *Id.* at 528-29 ("[A]lthough the videotape should have been produced under the discovery order, its admission into evidence did not constitute reversible error because no prejudice has been alleged or demonstrated by its nondisclosure."). And because the testimony was properly admitted, the trial court could rely on the testimony in reaching its verdict.

Tyler advances two theories for why the evidence was insufficient in this case. First, he asserts that the trial court relied on the "totality of the circumstances" to find he constructively possessed the heroin and that a "totality of the circumstances" approach is inconsistent with the Due Process Clause of the United States Constitution and the requirement that his guilt be proved beyond a reasonable doubt. Second, he argues that there was insufficient evidence that he constructively possessed the heroin in the Newport cigarette package and that the evidence failed to exclude a rational hypothesis of innocence that Smith was in "sole possession" of the heroin, even under a totality of the circumstances analysis.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

We start by addressing Tyler's suggestion that the criminal standard of proof "beyond a reasonable doubt" is inconsistent with our caselaw allowing the fact finder to rely on the totality of the circumstances in a constructive possession case. It is, of course, "elementary that the burden is

on the Commonwealth to prove every essential element of the offense beyond a reasonable doubt." *Washington v. Commonwealth*, 273 Va. 619, 623 (2007) (quoting *Dowdy v. Commonwealth*, 220 Va. 114, 116 (1979)). This protection stems from the "Due Process Clause [which] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).

When it comes to the constructive possession of drugs, the Commonwealth must "show[ ] that the presence and character of the substance[s] w[ere] known to the defendant and that the substance[s] w[ere] subject to his dominion and control." *Cordon v. Commonwealth*, 280 Va. 691, 694 (2010). "Knowledge of the presence and character of the [drugs] may be shown by evidence of the acts, statements or conduct of the accused." *Eckhart v. Commonwealth*, 222 Va. 447, 450 (1981). The defendant's "acts, statements, or conduct," as well as "other facts or circumstances," may also constitute proof that the drugs were subject to his dominion and control. *Powers v. Commonwealth*, 227 Va. 474, 476 (1984).

Critically, "[p]ossession and not ownership is the vital issue. Possession may be joint or several. Two or more persons may be in possession where each has the power of control and intends to exercise control jointly." *Atkins v. Commonwealth*, 57 Va. App. 2, 23 (2010) (alteration in original) (quoting *Burnette v. Commonwealth*, 194 Va. 785, 792 (1953)); *see also Hamilton v. Commonwealth*, 16 Va. App. 751, 755-56 (1993) (noting that possession of contraband may be joint). Possession "need not be exclusive." *Eckhart*, 222 Va. at 450.

In determining whether a defendant is guilty of possession of contraband, the trier of fact must view the evidence based on the totality of the circumstances. *Haskins v. Commonwealth*, 44 Va. App. 1, 6 (2004). "Circumstantial evidence is not viewed in isolation." *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003). "While no single piece of evidence may be sufficient, the

- 8 -

'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion [of guilt].'" *Rams v. Commonwealth*, 70 Va. App. 12, 37 (2019) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)). Moreover, "[t]he statement that circumstantial evidence must exclude every reasonable hypothesis of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." *Hudson*, 265 Va. at 513.

In a case based on circumstantial evidence, "[t]he only requirement" is that the Commonwealth "put on enough circumstantial evidence such that a reasonable [fact finder] could have rejected [the] defendant's [hypotheses] of innocence." *Bagley v. Commonwealth*, 73 Va. App. 1, 27 (2021) (alterations in original) (quoting *Davis v. Commonwealth*, 65 Va. App. 485, 502 (2015)). The Commonwealth has met its burden of proof "[a]s long as 'a rational factfinder could reasonably reject [the appellant's] theories in his defense and find that the totality of the suspicious circumstances proved [his guilt] beyond a reasonable doubt.'" *Id.* (alterations in original) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 466 (2017)). Within these parameters, "circumstantial evidence is competent and is entitled to as much weight as direct evidence." *Finney v. Commonwealth*, 277 Va. 83, 89 (2009) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). A sufficiency inquiry "does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Bagley*, 73 Va. App. at 26-27 (quoting *Moseley*, 293 Va. at 463).

Coming back to where we started, this circumstantial evidence, in light of the totality of the circumstances, must prove each element beyond a reasonable doubt. *See Washington*, 273 Va. at 623.

Here, a rational fact finder was not compelled to adopt Tyler's hypothesis that Smith alone possessed the heroin in the Newport package or that Tyler was unaware of its presence and character.

The "combined force" of the circumstances presented to the trial court demonstrated that Tyler constructively possessed the heroin in the glovebox. *Rams*, 70 Va. App. at 37 (quoting *Stamper*, 220 Va. at 273). Tyler owned the vehicle and was driving the vehicle at the time of the traffic stop. And there was evidence of drug use and distribution throughout the vehicle. Along with the brown powder found in the Newport pack, later confirmed to be heroin, there was a baggy with brown powder in the front driver's door, a small plastic baggy with brown powder in the center console, and a folded-up lottery ticket with brown powder residue also in the center console. More than 60 unused lottery play slips were in the front passenger door. In addition, the evidence shows that Tyler handed Smith a gun and told her to put it in her purse. Expert testimony confirmed that both the firearm and lottery slips were correlated with drug distribution. *See also Stone v. Commonwealth*, 297 Va. 100, 103 (2019) (recognizing nexus between firearms and drug trafficking).

Moreover, Tyler's decision to empty out the bag with brown powder found in the door next to where he was sitting—just after law enforcement asked him about the bag—also supported a reasonable conclusion that he was familiar with the appearance of heroin generally and that he was aware of the heroin in his glovebox. And the glovebox was subject to his dominion and control as the owner of the car. When Officer Howard stopped Tyler and requested his registration, Tyler reached over to open the glovebox. Body camera footage shows

the Newport pack in the glove compartment when Tyler opened it, and there is no evidence of anyone else touching the Newport pack at any point later.[1]

Viewed as a whole, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that Tyler constructively possessed the heroin in the glovebox with the intent to distribute it. Because the evidence proved Tyler's guilt beyond a reasonable doubt, we hold that his due process rights were not violated.[2]

CONCLUSION

For these reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[1] Tyler suggests that the officers observed Smith "manipulating" the Newport pack during the stop based on a conversation captured on a body camera video. Considering any conflicting evidence in the light most favorable to the Commonwealth, we rely on Officer Howard's testimony at trial that Smith never told him that she "ha[d] th[e] Newport pack in her hand at the time of the stop." And Officer Shupp testified that he never saw Smith touch anything in the glovebox or the Newport pack.

[2] Tyler first assigned error to the court's failure to rule on his objections to the sentencing transcript, but in his reply brief he conceded that he has waived this argument. So we do not consider it. *See Butcher v. Commonwealth*, 298 Va. 392, 395 (2020) (appellate court may accept a concession of waiver "as a basis for not deciding" the issue raised on appeal).