COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Fulton and Raphael
Argued at Norfolk, Virginia


MARCUS WARREN DAVIS

                                                    MEMORANDUM OPINION[*] BY
v.          Record No. 1568-24-1                    JUDGE JUNIUS P. FULTON, III
                                                    OCTOBER 28, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge

Barrett R. Richardson (Richardson and Rosenberg, LLC, on briefs),
for appellant.

Angelique Rogers, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted Marcus Warren Davis of possession of

cocaine with the intent to distribute in violation of Code § 18.2-248. Davis asserts that the evidence

is insufficient to support his conviction. We agree with Davis and reverse the trial court's judgment.

BACKGROUND

"On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,'

the prevailing party below." *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)). "That principle requires us to

'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true

all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn

therefrom.'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

A few months before January 25, 2024, Davis was released from jail and his aunt allowed him to stay at her residence at 3002 Detroit Street in Portsmouth. On January 25, the police went to the Detroit Street address with an arrest warrant for Davis and a search warrant[1] for the home. When the police arrived, they found Davis in the front yard speaking with another man, approximately ten feet from the house. Davis was arrested, searched, and placed in a police car. No drugs or other narcotics were found on his person. When officers cleared the house, only Davis's aunt was in the residence.

Upon entry through the front door, officers were inside a living room area.[2] Upon searching that room, the police found a .22 caliber handgun on a small end table next to a recliner to the far left.[3] Underneath that table, they found a box of sandwich bags on the floor. To the far right of the room, approximately 12 feet away from the end table, was a closed red duffle bag on the floor beside a love seat. Inside the duffle bag were 24 individually wrapped baggy corners containing a total of 4.31 grams of cocaine and a separate, single "clump," which was 23.5 grams of cocaine.[4] On the love seat near the closed duffel bag, the police found a piece of mail addressed to Davis at

---

[1] The existence of a search warrant was referred to at trial but no search warrant was provided in discovery and none is in the record because the trial court sustained defense counsel's motion to exclude admission of a copy of the search warrant at trial.

[2] The living room area was also referred to by the parties and the trial court as a "common area."

[3] The gun was swabbed for DNA but no certificate of analysis was produced at trial nor is there one in the record.

[4] Police testified they also found in the living room what they described as "cut"— "material, normally some sort of powder, that is mixed in with various narcotics in order to -- it weakens the potency of it, but it increases the amount that you can distribute"—with empty capsules in a brown bag but "I can't recall where that brown bag was." The Commonwealth did not argue at trial or on brief that the presence of "cut" was any indicator of knowledge of the substance or dominion and control. It is merely mentioned in a footnote on brief that it was depicted in a photograph exhibit admitted at trial.

3002 Detroit Street. There were also two other pieces of opened mail with Davis's name and the Detroit Street address found elsewhere in the living room.[5]

Upon being questioned, Davis denied knowledge of the gun and drugs saying, "he didn't know anything about that." When the police noted that Davis's aunt was the only other person in the house and asked, "Are you saying it's hers?" he replied, "No. I'm not saying that."

The trial court denied Davis's motions to strike and found him guilty of possession of cocaine with the intent to distribute. Davis was acquitted of the non-violent felon in possession of a firearm charge in violation of Code § 18.2-308.2. Davis appeals.

## ANALYSIS

Davis argues that the evidence is insufficient to support his conviction. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions

---

[5] Unsure of where the other pieces of mail were recovered, Detective Barber testified that the photo showing the three pieces of mail together was not where those items were actually recovered—"[W]e moved them all to the couch to photograph them."

reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

The Commonwealth relies upon circumstantial evidence to establish Davis's constructive possession of cocaine in this case. As such "all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence." *Cordon v. Commonwealth*, 280 Va. 691, 694 (2010). Thus, the Commonwealth was required to establish beyond a reasonable doubt that Davis knew that cocaine was inside the duffle bag in the living room of his aunt's house and that bag was subject to his dominion and control. Davis asserts that the evidence failed to meet this burden.[6] He argues that "there was no conduct that showed that [he] was aware of the presence and character of the cocaine, and there was insufficient evidence the cocaine was subject to his dominion and control."

"In interpreting the Commonwealth's basic statutes proscribing possession of drugs, . . . the applicable legal principles are clear: Possession may be actual or constructive." *Wright v. Commonwealth*, 53 Va. App. 266, 273 (2009). "Establishing constructive possession requires proof 'that the defendant was aware of both the presence and character of the [item] and that it was subject to his dominion and control.'" *Watts v. Commonwealth*, 57 Va. App. 217, 232-33 (2010) (alteration in original) (quoting *Powers v. Commonwealth*, 227 Va. 474, 476 (1984)). "[T]he Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the [contraband] and that the [contraband was] subject to his dominion and control." *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009) (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)). To obtain a conviction for possessory offenses, "the Commonwealth must

---

[6] Davis does not argue on appeal that the Commonwealth failed to prove intent to distribute, so we do not address it here.

- 4 -

produce evidence sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that the defendant intentionally and consciously possessed the contraband with knowledge of its nature and character." *Commonwealth v. Garrick*, 303 Va. 176, 183 (2024). "Whether evidence is sufficient to prove constructive possession 'is largely a factual' question . . . ." *McArthur v. Commonwealth*, 72 Va. App. 352, 368 (2020) (quoting *Smallwood*, 278 Va. at 630). "Possession need not be actual, exclusive, or lengthy in order to support a conviction; instead, the statute criminalizes constructive or joint possession of illegal [items] of any duration[,]" regardless of who actually owns them. *Wells v. Commonwealth*, 32 Va. App. 775, 781 (2000).

"Although mere proximity to the contraband is insufficient to establish possession, it is a factor that may be considered in determining whether a defendant possessed the contraband." *Archer v. Commonwealth*, 26 Va. App. 1, 12 (1997). "Some courts have defined dominion and control to mean 'the ability to reduce an object to actual possession.'" *Hunter v. Commonwealth*, 56 Va. App. 50, 60 n.4 (2010). But "[s]uspicious circumstances, including proximity to a controlled drug, are insufficient to support a conviction." *Behrens v. Commonwealth*, 3 Va. App. 131, 135 (1986).

At the time the officers arrived, Davis was outside of the home. The record is silent as to how long Davis had been outside the home or when he was last inside the home prior to the arrival of the police. Neither the duffle bag nor the drugs contained in it could be visible to Davis from outside the home. Nor were the drugs visible or in plain view from inside the home. Consequently, Davis's physical proximity to the home's exterior does not equate to physical proximity to the drugs discovered inside the home. While there was evidence that at the time Davis was observed outside the home, he was in a grassy area "10 feet away from the front door," there was no evidence at trial touching on the question of whether Davis had any "ability to reduce the [contraband] to his actual possession" from where he stood outside the home.

- 5 -

Additionally, the fact that Davis's mail was located in the same room as the drugs found in a closed duffel bag is of no moment and does not prove that Davis ever had the ability to actually possess the drugs at any particular time. *Cordon*, 280 Va. at 696 (Personal effects found in the room where drugs were located is insufficient to prove beyond a reasonable doubt that Cordon was aware of the presence of the drugs found in a sealed cooler or that he had dominion and control.). This is especially true where the duffle bag, like the cooler in *Cordon*, was a very portable item; there were no forensics tying Davis to the drugs; and no evidence of when Davis might have last been in the home or when the drugs and gun were placed there.

Proof that drugs are found "in premises . . . owned or occupied by the defendant is insufficient, standing alone, to prove constructive possession. Such evidence is probative, but it is only 'a circumstance which may be considered . . . along with the other evidence.'" *Powers*, 227 Va. at 476 (second alteration in original) (quoting *Gillis v. Commonwealth*, 215 Va. 298, 301 (1974)); Code § 18.2-250 ("[O]wnership or occupancy of premises or vehicle upon or in which a controlled substance was found shall not create a presumption that such person either knowingly or intentionally possessed such controlled substance.").

In *Powers*, the Virginia Supreme Court reversed a conviction for constructive possession of LSD. Police executed a search warrant at Powers's home that he rented with his wife. *Powers*, 227 Va. at 475. Neither one was present when police arrived. *Id.* A search of the premises revealed LSD hidden in an unfinished attic and Powers was arrested upon returning to the home. *Id.* at 475-76. The Commonwealth could not point to evidence of any acts, conduct or statements of Powers "or other facts or circumstances" tending to show he "was aware of both the presence and character of the [LSD] and that [they were] subject to his dominion and control." *Id.* at 476. The fact that Powers and his wife were sole residents of the premises,

- 6 -

Powers's failure to disclaim guilt, and the street value of the drugs were not sufficient evidence to support a conviction for constructive possession. *Id.* at 476-77.

When asked about the contraband, Davis denied it was his and when police suggested that his denial must mean it was his aunt's, Davis replied, "I'm not saying that." The Commonwealth argued that this statement "in a roundabout way" must mean that the contraband belonged to Davis "if he's saying . . . it's not hers." The trial court flatly rejected that argument saying, "I can't make my decision based on a roundabout way and stuff like that. You know that. I can't speculate." A trial court is not permitted to infer guilt solely from the fact that an accused makes a statement denying knowledge of the drugs. It is true that if a defendant's denial of circumstances relating to an illegal act is *inconsistent with* previous statements or facts, a factfinder may infer guilty knowledge. *See Covil v. Commonwealth*, 268 Va. 692, 695-96 (2004). But in this case, Davis's statement was not inconsistent with any other statements made by him or with the facts, and the trial court was therefore not entitled to make an inference of guilty knowledge and in fact did not do so. *See Cordon*, 280 Va. at 695.

The Commonwealth argued at trial and on brief that the fact that Davis and his aunt were the only occupants of the house and the drugs were in the same room where Davis's mail was found was sufficient to prove he had knowledge. As noted in *Powers*, this is not "other evidence" to be considered to show awareness of the presence and character of the contraband but rather such evidence "merely tends to reinforce the conclusion that the defendant and his wife were the sole residents of the premises; *it does not foreclose the possibility that the [contraband] was owned and hidden by another*." 227 Va. at 476 (emphasis added); *see Young v. Commonwealth*, 275 Va. 587, 592 (2008) ("Countless scenarios can be envisioned in which controlled substances may be found in the possession of a person who is entirely unaware of

- 7 -

their nature and character."). Further, there was no testimony that Powers was not surprised when he was charged "or that he failed to disclaim his guilt." *Powers*, 227 Va. at 476.

Here, Davis was outside the residence when the police arrived. No drugs or firearms were found on his person. There is no evidence Davis attempted to flee. The drugs and firearm were found in a common area of the home. The drugs were not in plain view but inside a sealed duffle bag. None of Davis's mail was found inside the duffel bag where the drugs were concealed. While the evidence showed both Davis and his aunt stayed in the home, there was no evidence about who else may have lived in the home or recently visited. There is no evidence as to when Davis was last in the home, when or how his mail came to be in the common area or when the drugs and gun were put there. Too, no forensic evidence ties Davis to the gun, the closed duffel bag or the drugs inside the duffel bag.

It is well established that "[w]hile a conviction may properly be based upon circumstantial evidence . . . [t]here must be an unbroken chain of circumstances 'proving the guilt of the accused to the "exclusion of any other rational hypothesis and to a moral certainty."'" *Gordon v. Commonwealth*, 212 Va. 298, 300 (1971) (citation omitted). "When proof of constructive possession is dependent upon circumstantial evidence, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" *McMillan v. Commonwealth*, 277 Va. 11, 19 (2009) (quoting *Garland v. Commonwealth*, 225 Va. 182, 184 (1983)).

The Commonwealth's argument for conviction is based on Davis's shared occupancy of the residence with his aunt and his refusal to cast blame on her, along with the close proximity of his mail to the closed duffle bag in which the cocaine was discovered. Specifically, the Commonwealth argues that because "the drugs and the mail and the gun are all in the same

room, . . . it's all his stuff." However, such evidence does not make a conviction. "[S]uspicion or probability of guilt is not enough for a conviction." Model Jury Instrs.—Crim. No. 2.100.

The Commonwealth relies on several cases in support of her argument that there was sufficient evidence of constructive possession, but more specifically "this case resembles" *Commonwealth v. Garrick*, 303 Va. 176 (2024). Their reliance on *Garrick* is misplaced.

*Garrick* was found asleep behind the wheel of a vehicle parked in a convenience store parking lot. *Id.* at 180. He was the only person in the vehicle and was within arm's reach of the drugs and gun found in the glovebox. *Id.* Garrick made statements that he drove the vehicle on a regular basis, and the vehicle maintenance receipts in his name were in the same glovebox "literally intermingled with the firearm and the drugs[.]" *Id.* at 181 (alteration in original). In affirming Garrick's constructive possession conviction,[7] the Virginia Supreme Court found that a reasonable factfinder could conclude that the probative value of the fact that he was within arm's reach of the glovebox containing the gun and drugs was "increased given that he was the sole occupant of the vehicle." *Id.* at 184-85. In addition to his close proximity, Garrick had been in the vehicle a long period of time, fell asleep in the car, was a primary driver of the car, and regularly maintained it based on receipts found with the contraband.

*Garrick* can be distinguished from the facts here. Unlike Garrick, who was the sole occupant of the vehicle containing the contraband, Davis was not inside the home when police arrived, and no evidence put him inside the home during or after the time the contraband was placed in the common area. On this record, Davis was never within close proximity of anything inside the home. The home was easily accessible to others—Davis's aunt not only owned the home but was found inside the home when police arrived. While arguably the contraband in

---

[7] The *Garrick* Court focused on "whether Garrick was aware of the presence of the items." The arguments at trial and on appeal did not address dominion and control. *Garrick*, 303 Va. at 183 n.2.

Garrick was "concealed" in a glovebox, the personal documents with Garrick's name on them were "literally intermingled with" the gun and drugs. Not so here, as Davis's personal documents were found loose at various locations, some of them unknown, in the common area. There was no temporal evidence as to when the mail was placed there or when the contraband was placed there.

The evidence here lacks any indicia that Davis knew of the nature and character of the contraband or that he ever exercised dominion and control over it. The totality of the circumstances in this case do not support the trial court's conclusion that Davis constructively possessed the cocaine.

CONCLUSION

Accordingly, we reverse the trial court's judgment and dismiss Davis's conviction.

*Reversed and final judgment.*